**In re Vincent J. MEO and Eleanor Meo.**

**Bankruptcy No. 1–84–00280.**

United States Bankruptcy Court, M.D. Pennsylvania.

March 8, 1988.

Theodore W. Branin, Shrewsbury, Pa., John W. Thompson, Jr., York, Pa., for debtors.

Lawrence G. Young, York, Pa., trustee.

John E. Kelly, Jean L. Betz, Bel Air, Md., for trustee.

Frederick L. Reigle, Reading, Pa., Susan A. Griisser, Gil A. Abramson, Semmes, Bowen & Semmes, Baltimore, Md., for Maryland Cas. Co. and American General Life Ins. Co. of Delaware.

## MEMORANDUM CONCERNING MOTION TO RE–OPEN TIME FOR FILING COMPLAINTS OBJECTING TO DISCHARGE

ROBERT J. WOODSIDE, Bankruptcy Judge.

Before the Court is the motion of Maryland Casualty Company and its parent company, American General Life Insurance Company of Delaware (hereinafter referred to collectively as "Maryland Casualty") to re-open the time for filing complaints objecting to discharge of the debtors under 11 U.S.C. § 727. Movants concede that they have missed the time period for objecting to discharge specified in Bankruptcy Rule 4004(a)[1] and that this court is not authorized to extend that deadline at this time. *See In re McDowell*, 85 B.R. 717 (M.D.Pa. 1986). Movants, argue, nevertheless, that the debtor has engaged in post-petition misconduct and that they are, accordingly, permitted to seek denial of the discharge within

---

1. Bankruptcy Rule 4004(a) specifies that "[i]n a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The first date set for the meeting of Chapter 7 creditors in this case was December 17, 1985 and the deadline for filing complaints objecting to discharge was, accordingly, February 17, 1986. Maryland Casualty's motion was filed on March 28, 1986.

the time deadlines specified in § 727(d).[2] This court has held a hearing on the question of whether the debtors have engaged in any post petition misconduct such as to allow Maryland Casualty to challenge their right to a discharge at this time. The matter has been briefed and is now ready for decision.

*Facts*

1. On or about February 15, 1984, Mr. Vincent J. Meo loaned $3,000 to his daughter for the purpose of establishing a video rental business.

2. On April 17, 1984, the Debtors, Vincent J. Meo and Eleanor E. Meo filed a petition under Chapter 7 of the Bankruptcy Code. In paragraph 12 of the debtors Statement of Financial Affairs the debtors identified a $3,000 transfer to "daughter in law ... as a loan to start business, which monies were used to purchase video cassette tape recorders and tapes for sale in a business of the same subject matter." On Schedule B-4 the debtors listed as an exempt item of property, an "equitable interest in daughter's business in New Freedom, Pennsylvania" in the amount of $3,000.

3. On October 24, 1984, the debtors filed a motion to convert the case to one under Chapter 11 of Code. The case was ordered to be converted on December 17, 1984.

4. On January 1, 1985, Mr. Meo signed a partnership agreement with his daughter, Mary Ellen Meo, and his son, Dominic Meo. Under the agreement, Mr. Meo was to receive 66.0% of the net profits of the business known as Star Video I, located at 6 East Franklin Street, New Freedom, Pennsylvania 17349.

5. On January 29, 1985 the debtor was sworn and examined at a Chapter 11 meeting of creditors held pursuant to section 341 of the Bankruptcy Code. Presiding over that meeting was the Court's Estate Administrator, Mr. David Brady.

6. At the creditor's meeting, Mr. Meo testified that his daughter had transferred to him a 66 percent interest in the Star Video rental business located at 6 East Franklin Street in New Freedom (Mov.Ex. 1, Tr. 1/29/85 at pp. 12–16). Mr. Meo testified that he had given $3,000 to his daughter to start the business and that he also received $5,000 from his brother in law in New York and that his daughter used this money as well to start the business. Mr. Meo estimated that the business had about $20,000 worth of inventory, consisting of movies, tapes and VCR's.

7. At the creditors' meeting, Mr. Meo also testified that he was a former employee of Maryland Casualty and that he intended to bring a lawsuit against that company for wrongful discharge (Mov.Ex. 1, Tr. 1/29/85 at p. 6).

8. On March 5, 1985, Mr. Meo filed a lawsuit against Maryland Casualty Company for unlawful discharge. The case was filed in the Federal District Court in Baltimore, Maryland.

9. On April 8, 1985, the debtors filed their Chapter 11 statement of financial affairs. (Docket Ent. 28). This statement again listed the $3,000 transfer to his daughter to start the video rental business. *See* Docket Ent. 28, ¶ 14. The new statement also listed the name of the business as Star Video at 6 East Franklin St. in New Freedom (Docket Ent. 28, ¶ 1) and listed a partnership with Maryellen Hoffman and Dominic Meo. (Doc. Ent. 28, ¶ 21.)

10. On July 18, 1985, the debtors filed a Chapter 11 Plan of Reorganization and Disclosure Statement. The disclosure statement explained the $3,000 loan to debtors' daughter for the start of the Star Video business in New Freedom and indicated

---

2. Section 727(d) of the Code provides in relevant part:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

that Mr. Meo had entered into a partnership agreement on January 1, 1985 in which he was granted a sixty-six and two thirds percent interest in the business. The disclosure statement further states:

> Since opening, Star Video has opened two branch operations; one on West Market Street in West York Borough. This store has had to be closed. Another store has been opened on North George Street in North York Borough and has been successful; disputes, however, with the landlord will force its relocation. There are, in addition more favorable locations which Petitioners want to try.

11. On October 10, 1985, the debtors filed an election to convert their case to one under Chapter 7 of the Code. The case was converted by this court's order of October 15, 1985.

12. On December 17, 1985, the debtors filed their monthly report for October 1985. This report indicated that the inventory of Star Video was worth approximately $42,-000.

13. On January 30, 1986, the debtors were sworn and examined at a Chapter 7 meeting of creditors. At this creditor's meeting Mr. Meo testified that he was a part owner of his daughter's video business (Mov.Ex. 3, Tr. 1/30/86 at p. 10), and that his daughter had given him part of the business so that he could pursue a Chapter 11 reorganization (Tr. 1/30/86 at p. 17). In response to a question about Star Video II, Mr. Meo indicated that this business "was my son and I" (Tr. 1/30/86 at p. 18).

14. On January 30, 1986 the debtors amended their schedules to list Maryland Casualty as a creditor.

15. On March 13, 1986, the debtors amended their schedules to list Mr. Meo's lawsuit against Maryland casualty for an unliquidated amount of damages.

16. On March 20, 1986, the debtors filed another amendment concerning the Maryland Casualty lawsuit, listing the market value of this asset as $250,000.

17. On March 31, 1986 Maryland Casualty filed the instant motion to reopen time for filing complaints objecting to discharge.

18. On or about June 24, 1987, Maryland Casualty obtained from the Internal Revenue Service the Meo's tax returns for 1984 and 1985. Schedule C of the 1984 tax return lists Mr. Meo as proprietor of a business known as Star Video II, located at 428 North George Street in York, Pennsylvania. That schedule further lists the year end value of that business's inventory as $10,000.00.

## Discussion

 Section 727(d)(1) of the Bankruptcy Code allows a creditor to seek the revocation of a debtor's discharge within one year after the discharge is granted when "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge." 11 U.S.C. § 727(d)(1). Bankruptcy Rule 4004(a), on the other hand, permits a creditor to object to the granting of a discharge no later than 60 days following the first date set for the meeting of creditors.

The case at hand presents the situation in which the time for filing an objection to discharge has expired, thereby precluding the possibility of a Rule 4004(a) action, yet, because the discharge has not been entered, the provisions regarding revocation, when read literally, also do not apply. In the case of *In re Wilferth (United New Mexico Bank v. Wilferth)*, 57 B.R. 693 (Bankr.D.N.Mex.1986), the court noted the apparent difficulty in applying the two provisions by stating: "Can the rule make post-petition conversion of property a ground for denial of discharge, require [that] the objection to discharge be filed before the conversion is discovered, indeed perhaps before it occurs, and still be consistent with the Bankruptcy Code?" 57 B.R. at 694.

The *Wilferth* court concluded that the bar date established by Rule 4004 applies only to pre-petition transactions while objections to discharge based on post-petition transactions are subject to the time restraints set forth in section 727(e) for actions to revoke a discharge. *Id.* at 695. This analysis, however, appears somewhat

incomplete. For example, sections 727(d) and (e) cannot govern *all* post petition misconduct because section 727(d)(1) expressly provides that a party seeking to revoke a discharge must not know of the alleged fraud until after the granting of such discharge. Similarly, Rule 4004(a) cannot be inapplicable to *all* post petition misconduct because section 727(a)(2)(B) expressly prohibits the court from *granting* a discharge when the debtor has transferred or concealed property of the estate "after the date of the filing of the petition."

It appears that the Bankruptcy Rules were designed to accommodate cases where the court discharges the debtor immediately upon the expiration of the 4004(a) objection period.[3] In such cases, when the misconduct is discoverable in time to allow a creditor or the trustee to object to discharge or request an extension of time to do so within 60 days of the date first set for a meeting of creditors, the bar date of Rule 4004(a) governs. When, on the other hand, the creditor or trustee has no notice of the misconduct until after the discharge has been granted, the time limits set forth in section 727(e) apply.

When the discharge is not granted immediately after expiration of the Rule 4004(a) period, it appears that the interests of justice would best be served by allowing the creditor and trustee to challenge the debtor's right to a discharge only when they did not learn of the debtor's misconduct until after the Rule 4004(a) period had expired.

### A. Fraud in the Procurement of the Discharge

■ To prevail in a case under section 727(d)(1), the creditor must show that there was fraud in the procurement of the discharge and also that grounds existed which would have prevented the discharge had they been known and presented in time. *See In re Jones* 71 B.R. 682, 684 (Bankr.S.D.Ill.1987). Maryland Casualty alleges that the debtors knowingly and fraudulently failed to disclose their interest in the Star Video business and the lawsuit against Maryland Casualty. As such, the debtors allegedly forfeited their right to a discharge by violating sections 727(a)(2)(A), (a)(2)(B), (a)(4)(A), and (a)(4)(D) of the Bankruptcy Code.[4]

■ Under section 727(a)(2), the creditor must show that the debtor acted with actual intent to hinder, delay, or defraud a creditor or an officer of the estate by transferring, destroying, or concealing property. *See* 11 U.S.C. § 727(a)(2); *In re Hadley*, 70 B.R. 51, 53 (Bankr.D.Kan.1987).

Section 727(a)(4)(A) has been held to require the creditor to prove more than the fact that certain information has not been listed in a debtor's schedules. In the case of *In re Shebel*, 54 B.R. 199 (Bankr.D.Vt. 1985), the court stated:

> The objecting creditor must prove … that the debtors made the false statement fraudulently, that is, specifically with intent to deceive … Debtors [discharge] will not be denied because information was missing or inaccurate, but because information was omitted or altered with the specific purpose of working a fraud….

*Id.* at 203–04, as cited in *In re Goldstein*, 66 B.R. 909, 919 (Bankr.W.D.Pa.1986). Finally, it has been held that under section

---

**3.** Bankruptcy Rule 4004(c) states, for example, that "[i]n a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge, the court shall *forthwith* grant the discharge …" (emphasis added).

**4.** The relevant statutory sections provide:
(a) The court shall grant the debtor a discharge, unless—
 (1) the debtor is not an individual;
 (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
 (A) property of the debtor, within one year before the date of the filing of the petition; or
 (B) property of the estate, after the date of the filing of the petition; …
 (4) the debtor knowingly and fraudulently, in or in connection with the case—
 (A) made a false oath or account;
 (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

727(a)(4)(D), it must be shown that the debtor withheld records with actual intent to defraud his creditors. *See In re Benson* 64 B.R. 76, 78 (Bankr.N.D.Ohio 1986).

■ In the present case, Maryland Casualty has simply failed to show that the debtor has attempted to hinder, delay or defraud his creditors by withholding information about his partnership interest and the Maryland Casualty lawsuit. It is undisputed that Mr. Meo informed the court's estate administrator on January 29, 1985 that he had a 66 percent interest in the Star Video business in New Freedom and that the business had about $20,000 worth of inventory. The New Freedom business was similarly listed in the debtors' Chapter 11 statement of financial affairs on April 8, 1985, and their Chapter 11 disclosure statement on July 18, 1985. Similarly, the debtors' Chapter 11 monthly report, filed on December 17, 1985, indicated that the inventory of Star Video was worth approximately $42,000. Finally, at the debtors' Chapter 7 meeting of creditors held on January 30, 1986, Mr. Meo testified that he was a part owner of his daughter's video business.

The debtors revealed Mr. Meo's interest in Star Video II in their Chapter 11 Disclosure Statement, where the business was described as "successful." When asked about Star Video II in the Chapter 7 meeting of creditors, Mr. Meo testified "that was my son and I." (Mov.Ex. 3, Tr. 1/30/86 at p. 18).

Mr. Meo testified at his Chapter 11 meeting of creditors on January 29, 1985 that he was a former employee of Maryland Casualty and that he intended to bring a lawsuit against that company for wrongful discharge. (Mov.Ex. 1, Tr. 1/29/85 at p. 6) Mr. Meo filed a suit for unlawful discharge against Maryland Casualty on March 5, 1985. The debtors amended their schedules on March 13, 1986 to list this suit.

The debtors' attorney for the bankruptcy case testified that the debtors had informed him of the lawsuit, that he had told the court and Pennsylvania Housing Finance Company about it, that he had failed to list the suit because he did not consider it to have any value; that the failure to list that action was his mistake; and that he amended the schedules when he realized that the suit should have been listed as a possible asset (Tr. at 76, 92).

It is evident from the record that Mr. Meo had disclosed the very interests which Maryland Casualty has accused him of secreting. Although it is possible that Mr. Meo's description of his interests has not at all times been fully accurate, there is absolutely no indication in the record that Mr. Meo intended to defraud his creditors by concealing, transferring, or lying about his assets. Maryland has failed to point to any misconduct on the debtors' part that would justify denying or revoking their discharge.

B. Maryland Casualty's Knowledge of the Alleged Fraud

■ It has been held that the requesting party has the burden of proving that it lacked knowledge of the alleged fraud prior to the granting of the discharge. *See In re Puente (Werner v. Puente),* 49 B.R. 966, 968 (Bankr.W.D.N.Y.1985). In *Puente,* the court noted that "[w]here the requesting party fails to sustain its burden of proving that it lacked knowledge of the fraud prior to the granting of the discharge, the cause of action should be denied.... The plaintiff's failure to submit evidence regarding the time when the plaintiff acquired knowledge of the alleged fraud is fatal." *Id.* at 968.

Maryland Casualty has failed to demonstrate that it was unable to raise its objections before the expiration of the Rule 4004(a) time period. Maryland Casualty's attorney admitted that the company was aware of the Meo's bankruptcy (Tr. at p. 10). This creditor was, obviously, also aware of the debtors' lawsuit against it for wrongful discharge. At the same time, Maryland Casualty has introduced no evidence on the question of when it first became aware of the debtors' allege "continuing fraud." In the absence of such evidence, this court cannot grant Maryland Casualty's request to challenge at this time the debtors' right to a discharge.

This court further notes, however, that the debtor had disclosed the fact that he

had an interest in the Star Video business-es both in his schedules and other papers filed with the court and in his creditor's meeting testimony well before the time for objecting to discharge had expired. Maryland would have had sufficient time to investigate the accuracy of his statements to either file a timely objection to discharge or to request an extension of time to file such an objection.

### Conclusion

This court finds that Maryland Casualty has failed to demonstrate any grounds for granting its motion for an extension of time to file a complaint objecting to the debtors' discharge. Accordingly, an appropriate order, denying that motion, will be entered.