In re Lelon C. DIETZ, dba Com Group Portland & Airbrush Digest Publishing, Debtor.

Peggy C. ROSS, Jeannette F. Hardy, Larry G. Wrenn, Jonathan M. Yost, Barclays American Financial Inc., Carl P. Dietz, O. Rufine Dietz, Isabel Tynon Martell, and Karen Lisbakken Lowery, Appellants/Cross–Appellees,

v.

JOHN MITCHELL, INC., Trustee Appellee/Cross–Appellant.

Lelon C. DIETZ, Appellant,

v.

JOHN MITCHELL, INC., Trustee, Appellee.

JOHN MITCHELL, INC., Trustee, Appellant,

v.

I. Kent BECKMAN, Appellee.

JOHN MITCHELL, INC., Trustee, Appellant,

v.

PACIFIC WESTERN BANK, an Oregon corporation, and I. Kent Beckman, Appellees.

Bankruptcy No. 382–00599.
BAP Nos. OR 86–1871 through OR 86–1875.
Adv. Nos. 85–0156 through 85–0158, 85–0161, 85–0181, 85–0427, 85–0466–S, 85–0102, 85–0154, 85–0510.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 16, 1988.

Decided Nov. 28, 1988.

Jonathan M. Yost, Huntington Beach, Cal., for appellant.

John W. Weil, Ransom, Blackman & Simson, Portland, Or., for appellee.

Before MOOREMAN, ASHLAND and JONES, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

These appeals arise out of various adversary proceedings brought under 11 U.S.C. § 549 by the trustee in the Chapter 7 proceedings below, as well as a complaint objecting to the discharge of the debtor brought pursuant to § 727. The adversary proceedings were consolidated for trial and tried together. Although involving numerous parties, the issues from each of the above appeals are related and involve essentially the same facts. Accordingly, this Panel has consolidated each of the above appeals for consideration together.

## FACTS

Lelon C. Dietz, dba Com–Group Portland and Airbrush Digest Publishing (debtor), filed a petition for relief under Chapter 11 in March 1982, with a plan being confirmed on September 13, 1983. In October 1984, however, the case was converted to a Chapter 7 and John H. Mitchell (trustee) was appointed as the trustee for the estate. Pursuant to court order, the trustee was authorized to operate Com–Group (a custom printing and type-setting operation), and accordingly, employed the debtor and other former employees to operate the business. The trustee, however, chose not to operate Airbrush Digest which was a separate business involving the publication and distribution of a magazine.

Although the debtor knew that the trustee did not intend to continue to operate Airbrush Digest, he apparently sought to "protect the business venture and to continue to service [certain] loans." In order to accomplish his purpose, the debtor "hired back" certain employees and opened a checking account with a Virginia bank. The debtor deposited approximately $24,-

500 in the account which he had borrowed from his fiance Jeannette Hardy. Later, the debtor deposited approximately $45,000 from prepaid magazine subscriptions as well as approximately $30,000 from certain accounts receivable for an approximate total of $100,000. Later, the debtor began to draw on the account by making payments to several individuals and entities in what was an apparent attempt to continue the business of Airbrush Digest.[1]

On February 22, 1985, 67 days after the 341(a) meeting,[2] the trustee filed a complaint against the debtor objecting to discharge pursuant to § 727(a)(2) of the Bankruptcy Code, or in the alternative a complaint to revoke the discharge pursuant to § 727(d). Additionally, on April 16, 1985, the trustee commenced numerous adversary proceedings against those individuals who had received any payment from the Virginia checking account seeking to avoid the post-petition transfers under § 549 of the Bankruptcy Code and seeking to recover the disbursed funds pursuant to § 550. The instant appeals and cross-appeals have arisen from the above adversary proceedings.

### Findings and Conclusions Below

After a three day trial (April 22, 23, and 24, 1986), the bankruptcy court entered the following Findings of Facts and Conclusions of Law.

The bankruptcy court determined *inter alia* that the Virginia checking account became property of the Chapter 7 estate. Additionally, the bankruptcy court determined that despite the debtor's knowledge that he was not authorized, the debtor opened the Virginia checking account and knowingly and intentionally failed to disclose the existence of the account in order to misappropriate assets of the estate. The court determined that the debtor's misappropriation of estate assets "constituted a conversion, even though the bank account into which the debtor deposited these estate assets was also an asset of the estate." The bankruptcy court also found that the debtor transferred approximately $100,000 from the Virginia checking account without authorization and that the debtor's actions were done with the intent to "hinder and defraud the trustee and creditors of the estate."

The bankruptcy court determined that the debtor had "wrongfully commingled" property of the estate with the $25,000 which had been borrowed from Jeannette Hardy. Accordingly, the court determined that those funds wrongfully commingled would be considered as having been "first withdrawn" for tracing purposes. Accordingly, the transfers to the respective defendants were reduced by that amount attributable to the commingled funds of Jeannette Hardy. The bankruptcy court also determined that two of the eleven defendants received the transferred funds "for value, in good faith, and without knowledge of the voidability of the transfer."

Based on the above findings, the bankruptcy court concluded that, because no objection to the debtor's discharge had been filed within 60 days of the 341(a) meeting, the discharge would be "deemed" entered on February 15, 1985. Additionally, the bankruptcy court concluded that because of the debtor's actions, the discharge was *"revoked* under 11 U.S.C. § 727(d)(1), (2)." The bankruptcy court concluded that "in the alternative," the debtor's discharge should be denied under 11 U.S.C. § 727(a)(2).

1. The amounts of the transfers to the different defendants in the adversary proceedings are set forth in the bankruptcy court's Finding of Fact #20. However, the reasons behind such payments are not apparent from the record since the actual transcript of the proceedings was not included. Although unclear, it appears that most of the payments were for the earned wages of the respective defendants arising from the work done for the benefit of Airbrush Digest. Additionally, one of the defendants, Mr. Yost represents himself as well as most of the defendants in this appeal. He was apparently paid certain attorney's fees from the Virginia checking account.

2. Although the time for objecting to discharge had passed pursuant to Bankruptcy Rule 4004, no formal order of discharge had yet been entered.

With regard to the trustee's complaints filed pursuant to § 549, the bankruptcy court concluded that the debtor's actions constituted a "conversion" of estate property and "a *transfer* to the debtor." Accordingly, while the debtor was considered the *initial transferee*, the various defendants in each of the § 549 proceedings would be deemed *"immediate or mediate transferees"* and thereby afforded a "good faith" defense pursuant to § 550(b)(1) of the bankruptcy code. As previously determined in the bankruptcy court's findings of fact, only two of the eleven defendants had established the above defense.

As a result of the bankruptcy court's conclusions, judgments were entered revoking the debtor's discharge and requiring the remaining nine defendants to return the funds received through payment out of the Virginia checking account.

### DISCUSSION

As previously set forth, the trials below were consolidated and each of the instant appeals arise out of the same Findings of Fact and Conclusions of Law. The merits of each appeal are addressed below.

### BAP NO. OR 86–1871/1872

In this appeal, the defendants in the adversary proceedings below, seek to set aside the judgments of the bankruptcy court which required each of them to return certain funds which the debtor had paid to them out of the Virginia checking account. The appellants first argue that the bankruptcy court was without jurisdiction to hear the adversary proceedings because each of the complaints had been filed after the debtor's discharge.[3]

■ The appellants' argument, however, is without merit since 11 U.S.C. § 549 (the basis of each of the underlying complaints), specifically provides:

An action or proceeding under this section may not be commenced after the earlier of—

(1) Two years after the date of the transfers sought to be avoided; or
(2) The time the case is closed or dismissed.

11 U.S.C. § 549(d).

At the time the instant complaints were filed, it is uncontroverted that the debtor's bankruptcy case was still open and the transfers at issue had occurred less than one year earlier. Accordingly, the complaints to set aside the post-petition transfers were timely filed and the appellants' argument cannot be supported. The appellants' reliance on the case of *In re Oro Import Co., Inc.*, 52 B.R. 357 (Bankr.S.D. Fla.1985), is inapposite since it involved a complaint to set aside a prepetition transfer pursuant to § 546 of the bankruptcy code.

The appellants' brief additionally argues that the bankruptcy court lacked jurisdiction to hear the complaint to revoke the discharge pursuant to § 727(d) of the bankruptcy code, because the trustee was aware of the alleged fraudulent acts prior to the debtor's discharge. This argument and the case cited by the debtor is without merit in the instant appeal because the complaints against each of the appellants were based on § 549 and not § 727. Even if the appellants could establish that the trustee knew of the debtor's acts prior to the date of discharge, it would not be grounds for dismissing the complaints brought pursuant to § 549 since it is undisputed that the complaints were filed within the time periods of § 549(d). The appellants' attorney has apparently confused the debtor's argument with those of the appellants.

The appellants next argue that the bankruptcy court erred in holding that the "initial transfer" was not when the debtor deposited the funds in the Virginia checking account, but when the appellants became payees of the checks. If this argument were adopted however, and the initial transfer is deemed to have been when the appellants were paid from the Virginia checking account, then pursuant to § 550(a) and (b), the appellants would be

---

**3.** Although there may be an issue as to whether the debtor's discharge should be deemed to have been entered after the passage of the time period for filing an objection to discharge, this conclusion by the bankruptcy court is essentially undisputed by the parties.

without a defense to the post-petition transfer.[4] The appellants' brief sets forth no rationale for this argument and is contrary to their next argument that each of the appellants had sufficiently established the § 550(b) "good faith transferee" defense.

The appellants next attempt to argue that the § 550(b) defense had been established at trial. Whether such a defense had in fact been established is a conclusion of law subject to *de novo* review. In order to determine whether the elements of the § 550(b) defense had in fact been established would require a full review of the record. In this case, however, the appellants have failed to provide an adequate record in that the transcript was not included by any party. Accordingly, the appellants have failed to show that the bankruptcy court erred in holding that a § 550(b) defense had not been established. *In re Burkhart*, 84 B.R. 658 (9th Cir. BAP 1988) (it is the responsibility of the appellants to file an adequate record).

Even though the bankruptcy court determined that the appellants/defendants in the underlying adversary actions had not

established a § 550(b) defense, the trustee has filed a *cross-appeal* (No. 86–1872), apparently seeking to reverse the bankruptcy court's conclusion that the debtor was the *initial transferee*. Given this Panel's decision to affirm the bankruptcy court as set forth above, the issue of whether the appellants/defendants were entitled to a § 550(b) defense is therefore moot.[5]

### BAP NO. OR 86–1873

█ In this appeal, the debtor seeks to set aside the bankruptcy court's order revoking his discharge pursuant to § 727(d) of the bankruptcy code. The debtor's first argument is that the bankruptcy court erred in granting the trustee an extension of time to file the *objection to discharge* under § 727(a) in that the time for filing such an objection had expired 60 days after the § 341(a) meeting.[6] *See* Bankruptcy Rule 4004. This argument, however, fails to address the fact that the trustee's action was also one for revocation of discharge pursuant to § 727(d). To hold that the trustee was precluded from seeking the revocation of the debtor's discharge because the discharge had not yet been for-

---

4. The language of section 550(a) and (b) establishes that only an "immediate or mediate transferee" is entitled to a good faith defense of an otherwise avoidable transfer.
   *Liability of transferee of avoided transfer.*
   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, *549*, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.
   (b) The trustee *may not recover under section (a)(2)* of this section from—
   (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
   (2) any immediate or mediate good faith transferee of such transferee.
   11 U.S.C. section 550(a)-(b).

5. This issue, however, is addressed in appeals No. 1874 and 1875 *infra,* wherein the trustee appeals the bankruptcy court's conclusion that

two of the defendants in the underlying adversary proceedings had established a § 550(b) defense.

6. Section 727(a) sets forth ten (10) situations in which the debtor will be denied a discharge. Section 727(c) and Bankruptcy Rule 4004 allows a creditor, the trustee, or the U.S. trustee to file a complaint *objecting* to the debtor's discharge based on any one of the conditions set forth in section 727(a). Section 727(d) on the other hand specifically provides:
   (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall *revoke* a discharge granted under subsection (a) of this section if—
   (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
   (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or
   (3) the debtor committed an act specified in subsection (a)(6) of this section.
   11 U.S.C. section 727(d) (emphasis added).

mally entered and at the same time hold that the trustee was precluded from objecting to discharge because the time period under Bankruptcy Rule 4004 had passed, would effectively insulate the debtor from any action seeking to deny the discharge. Such a result is contrary to the purpose of § 727 and accordingly, it appears that the bankruptcy court properly determined that the discharge would be deemed entered on February 15, 1985, thereby allowing the trustee the opportunity to address any improprieties contemplated by § 727.

■ The debtor next contends that the trustee's action to revoke the discharge was improperly granted since the trustee was "aware of the relevant facts" within the time period for filing an objection to discharge. Accordingly, the debtor argues that the trustee is precluded from bringing an action to revoke the discharge. While it appears that the debtor's characterization of the law is correct, the bankruptcy court specifically found:

> [t]he trustee did not learn that there was a Virginia bank account in the name of Airbrush Digest until January 28, 1985. The trustee then contacted the Virginia Bank concerning the account but that bank refused to provide the trustee with any information. The trustee then requested debtor's attorney to provide information concerning that account and, on February 18, 1985 [three days after the debtor's discharge was deemed entered], debtor's attorney provided that information.... The trustee filed his motion to object to debtor's discharge or, in the alternative, to revoke his discharge on February 22, 1985.

In view of the above findings and in light of the lack of an adequate record in the instant case, the record supports the conclusion that the trustee had "neither actual nor constructive knowledge of the facts" to support an objection to discharge and that the trustee had used sufficient "diligence in trying to discover the pertinent facts." *In re Mufti*, 61 B.R. 514, 519 (Bankr.C.D. Cal.1986) (citation omitted).

7. No appellee's brief has been filed in this ap-

BAP NO. OR 86–1874

In this appeal, the trustee appeals the bankruptcy court's conclusion that the defendant I. Kent Beckman (appellee) was entitled to assert a § 550(b) defense and that the appellee had sufficiently established such a defense thereby warranting judgment in favor of the defendant/appellee.[7]

■ The initial issue to be addressed in this appeal, is the trustee's argument that the appellee and not the debtor was the actual *initial transferee* and thus is not entitled to a § 550(b) defense. The bankruptcy court determined that the debtor had "converted" the funds at issue when he deposited them into the Virginia checking account. As such, the debtor's actions constituted a post-petition "transfer" pursuant to § 549 and as defined by § 101(50). Accordingly, the bankruptcy court concluded that the debtor was the initial transferee and each of the payees out of the Virginia checking account would be immediate or mediate transferees entitled to a good faith defense.

The trustee argues that a "transfer" must be a transfer *out of the estate* and since the bankruptcy court also ruled that the Virginia checking account was "property of the estate" the debtor's actions do not constitute a transfer. This argument, however, appears to be contrary to the express language of § 101(50) and § 549(a). The relevant portions of § 101(50) provide:

> (50) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property,....

11 U.S.C. § 101(50). It is undisputed that this language is afforded broad application. Additionally, the relevant portion of § 549 states:

> (a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a *transfer of property of the estate*—....

11 U.S.C. § 549(a) (emphasis added). Given the above language, although the checking

peal.

account may have been property of the estate for purposes of § 541, such a determination would not preclude a finding that the debtor had "transferred" property of the estate by secretly opening an account and depositing estate funds which he inappropriately used to further the Airbrush Digest business. The trustee fails to cite any authority for his proposition and accordingly, this Panel holds that the bankruptcy court did not err in holding that the debtor was the initial transferee of the estate property when he misappropriated the funds by depositing them in the Virginia checking account.

The trustee also argues that a "conversion" under Oregon law did not actually occur until the funds were paid to each of the defendants in the adversary proceedings. Even assuming that the trustee's interpretation of Oregon tort law is correct, such a determination would not necessarily preclude a finding that the debtor had "transferred" property of the estate when he misappropriated the funds at issue. Given the broad language of § 101(50) (supra), a finding that a "transfer" occurred does not require a finding that the debtor had actually "converted" the funds.

The trustee next argues that under the "mere conduit" theory, the appellee should be considered the initial transferee and the debtor was the "mere conduit" for the appellee obtaining the subject transfer. The trustee's reliance on the "mere conduit" theory in the instant case, however, is inapposite. Each of the cases cited by the trustee involved circumstances where the "transfer" to the conduit was *solely for the purpose* of benefiting the eventual transferee. *See In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334, 336–37 (Bankr.S.D.N.Y. 1983) (a law firm which had received a settlement payment was deemed the "mere conduit" for the benefit of the client). In the instant case, however, it is essentially undisputed that the debtor's misappropriation of the funds in question was not solely for the purpose of transferring it to each of the defendants, but rather was an attempt by the debtor to secretly continue certain operations of Airbrush Digest. The fact that the defendants were apparently paid as employees, was merely an indirect incidence of the debtor's actual purpose. Such a situation is the type of transfer contemplated by § 550 and thus the "mere conduit" theory is inappropriate.

Finally, the trustee argues that the appellee failed to plead or prove the elements of the § 550(b) defense. The trustee argues that as an affirmative defense, the defendant's failure to plead the § 550(b) defense amounts to a waiver and thus the bankruptcy court improperly held that the defense had been established. Although the defendant's answer to the initial complaint does not set forth an affirmative defense based specifically on § 550(b), this alone would not warrant a reversal. Pursuant to Fed.R.Civ.P. 15 (as adopted by Bankruptcy Rule 7015), pleadings may be amended to conform to the evidence and issues raised at trial. As previously mentioned, the appellant (trustee) has failed to supply a copy of the transcript and accordingly has failed to adequately support his contentions that the § 550(b) defense was neither plead or proved.

### BAP NO. OR 86–1875

The final appeal essentially involves the same arguments as set forth and discussed above in BAP NO. OR 86–1874, in that the trustee argues that the bankruptcy court erred in concluding that appellee Pacific Western Bank was entitled to a § 550(b) defense. The trustee's brief and arguments are essentially identical to those proffered above and have accordingly, been addressed.

Based on the foregoing, the bankruptcy court's judgments giving rise to the instant appeals are AFFIRMED.