In re Geraldine POWELL,
Defendant/Appellee,

v.

FIRST NATIONAL BANK OF
NASHVILLE, ARKANSAS,
Plaintiff/Appellant.

Civ. No. 90–4008.

United States District Court,
W.D. Arkansas,
Texarkana Division.

March 19, 1990.

David L. James, Texarkana, Tex., for defendant/appellee.

William Randal Wright, Hope, Ark., for plaintiff-appellant.

MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

I.

On March 28, 1988, Geraldine Powell filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Western District of Arkansas. Powell stated under penalty of perjury that her land at Route 5, Box 108 ("Box 108") in Nashville, Arkansas was covered by the Arkansas homestead exemption, A.C.A. § 16–66–210 (1989 Supp.), and therefore could not be attached by creditors. The bankruptcy court then set July 18, 1988 as the deadline for objections to the discharge of Powell's debts. *See* Fed.R.Bankr.P. 4004(a) (all complaints must be within 60 days of creditors' meeting). The deadline passed without the filing of any objections to Powell's homestead claim.

On October 13, 1988, First National Bank of Nashville, Arkansas ("the Bank"), one of Powell's creditors, conducted an examination of Powell and her husband. At that examination, Powell admitted that she did not live at Box 108, and that she had in fact resided at Route 5, Box 106 ("Box 106") in Nashville for two years. Thus, the bank asserts, she could claim no homestead in the premises. Powell maintained that she was only living temporarily at Box 106 in order to care for her ill father, and that her son lived at Box 108. The Bank was unaware of these facts prior to the October 13 examination.

On May 9, 1989, the bankruptcy court issued an order discharging Powell from her debts. Shortly thereafter, the Bank filed the instant motion to reopen this case and to revoke Powell's discharge. The Bank alleged that Powell had obtained the discharge by fraudulently claiming a homestead exemption for Box 108, and that the discharge should therefore be revoked pursuant to 11 U.S.C. § 727(d)(1), which allows revocation of a discharge if it was "obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge...."

The bankruptcy court held a hearing on the Bank's motion, and on October 11, 1989, entered an order denying the Bank's motion.[1] The Bank then appealed the denial to this court. For the reasons stated below, the bankruptcy court's order will be affirmed.

## II.

The bankruptcy laws allow revocation of a discharge only if the requesting party "did not know of such fraud until after the granting of the discharge...." 11 U.S.C. § 727(d)(1). Bankruptcy Rule 4004(a), on the other hand, requires that any objections to discharge be made within 60 days of the creditors' meeting regarding discharge. Thus, the question presented is whether a creditor who discovers fraud after the deadline for objections to discharge, but before the discharge itself, may either file objections to the discharge or move to revoke it.

The court has discovered only two cases that address this issue. In *In re Meo*, 84 B.R. 24 (Bkrtcy.M.D.Pa.1988), the time for objecting to a discharge under Rule 4004(a) had expired but the discharge had not yet been entered. The court stated in dictum that, despite the plain language of the rule, "the interests of justice would best be served by allowing the [objecting parties] to challenge the debtor's right to a discharge." *Id.* at 28. In *In re Dietz*, 94 B.R. 637 (9th Cir.B.A.P.1988) the court reached a similar result by "deeming" the date of discharge to be the deadline for filing objections to it.

These cases aim at an equitable result by filling up an apparently anomalous lacuna created by the statute and the rule with a judicial amendment of them. Perhaps this is a laudable instinct; certainly it is one uninfected by improper motive. But this court declines to reach a result, however appealing to a sense of fairness, where the commands of Congress and the Supreme Court[2] are plainly and unmistakably to the contrary. It is true that it is difficult, perhaps impossible, to imagine why these bodies would have wanted to allow discharges to be avoided by frauds discovered within 60 days of the creditors' meeting regarding discharge and by frauds discovered after discharge, but not by frauds discovered in the interim. But the court does not conceive it to be its job to rationalize the statute and the rule. The question is not why Congress and the Supreme Court said what they did; the question is what did they say. In this case, there can be no doubt as to the appropriate answer: Congress and the Supreme Court have not provided for discharges to be avoided in cases like the one presented by these facts.

For those whose sense of justice or common sense are offended by this result, the court has a few additional words. It must be conceded that Congress is not obliged to provide for any relief for fraud. Suppose, however, that it had nevertheless, as a matter of legislative grace, decreed that creditors could object to discharge on account of fraud within 60 days of the meeting to discuss discharge, but provided for no such relief for frauds discovered there-

---

1. The bankruptcy court did not issue an opinion or state the reasons for its denial in its order. Although parts of the hearing are in the record, the bankruptcy court decided to request post-hearing briefs rather than making a decision at the hearing. Thus, the court cannot determine why the bankruptcy court decided as it did.

2. The bankruptcy rules were prescribed by the order of the Supreme Court of the United States pursuant to authority granted them in 28 U.S.C. § 2075. Congress had the power to alter these rules within 90 days of their transmittal to it but made no alteration relevant here.

after. Would it then be permissible to argue that the courts ought nevertheless to extend the time for such objections? To ask the question is to provide the answer. The only difference between the case posited and ours is that Congress has actually provided an expanded opportunity for avoidance of discharge, but only if the fraud is discovered after the discharge. Can it be successfully maintained that by being more generous than it is obligated to be, Congress has somehow committed to the courts the power to amend its statutes? The court thinks not.

If this is indeed a *casus omissus* in the statute, then Congress ought to supply it. The court's duty is to do as Congress presently directs. The judgment below will therefore be affirmed.