914 F.2d 161
 23 Collier Bankr.Cas.2d 1006, Bankr. L. Rep. P 73,611
In re Lelon C. DIETZ, dba Com-Group Portland; Airbrush
Digest Publishing, Debtors.
Peggy C. ROSS; Jeannette F. Hardy; Larry G. Wrenn;
Jonathan M. Yost; Barclays American Financial
Inc.; Carl P. Dietz; O. Rufine Dietz;
Isabel Tynon Martell; Karen
Lisbakken Lowery, Appellants,
v.
John MITCHELL, Trustee, Appellee.
In re Lelon C. DIETZ, dba Com-Group Portland; Airbrush
Digest Publishing, Debtors.
Lelon C. DIETZ, Appellant,
v.
John MITCHELL, Trustee, Appellee.
 Nos. 89-35030, 89-35031.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 8, 1990.
Decided Sept. 4, 1990.
 
 Jonathan Yost, Huntington Beach, Cal., for appellants.
 Steve Rissberger, Ranson, Blackman & Simson, Portland, Or., for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before WRIGHT, TANG and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 John Mitchell, the trustee in bankruptcy, requested that the bankruptcy court deny or, in the alternative, revoke Lelon Dietz's chapter 7 discharge; and that it order certain individuals to return various sums of money that Dietz, without Mitchell's authority, had paid them from estate assets. The bankruptcy court granted Mitchell's requests, and the Bankruptcy Appellate Panel affirmed in all respects. 94 BR 637. Dietz and the payees appeal. We affirm.
 
 FACTS
 
 2
 In the fall of 1984, after Dietz had filed a voluntary petition for relief and had subsequently defaulted on his chapter 11 plan, the bankruptcy court placed Dietz's estate into liquidation under chapter 7 of the bankruptcy code, 11 U.S.C. Secs. 701-766, and appointed Mitchell as trustee. Dietz's creditors met in December 1984, and the subsequent 60-day period for objecting to discharge of debts expired without any objections having been filed. Although Dietz thereby became entitled to discharge on February 15, 1985, the court never entered a formal order to that effect.[1]
 
 
 3
 Pursuant to his authority, Mitchell had decided to operate one of Dietz's two sole proprietorships ("Com-Group", a custom printing operation) and not to operate the other ("Airbrush", a magazine publishing and distribution operation). Despite the trustee's decision, Dietz took steps to continue Airbrush. Without informing Mitchell or the creditors, Dietz opened a bank account in Virginia, and deposited in it proceeds from prepaid subscriptions, accounts receivable and a loan from his fiance. Dietz also drew on the account in order to keep the business going.
 
 
 4
 Mitchell first became aware of the Virginia account sometime in January 1985; he obtained official records of the account on February 18, 1985. Four days later, on February 22, 1985, he filed a complaint in which he asked that the court either deny or revoke Dietz's discharge.[2] Subsequently, Mitchell filed several adversary proceedings against individuals who had received payments from the Virginia account.
 
 
 5
 The bankruptcy court ruled that, because no objection had been filed within 60 days after the meeting of Dietz's creditors, Dietz's discharge was "deemed to have been entered" on the 60th day, i.e., February 15, 1985. The court also found, among other things, that the Virginia account was property of the chapter 7 estate, that Dietz knowingly and intentionally failed to disclose the account's existence in order to misappropriate assets of the estate, and that Dietz acted to hinder and defraud the trustee and creditors of the estate. Consequently, the court revoked the discharge.[3] It also determined that nine of the eleven individuals who received funds from the Virginia account must repay the estate.
 
 DISCUSSION
 
 6
 Dietz and the Virginia account payees claim that the bankruptcy court's resolution of Mitchell's actions suffered from procedural and substantive defects. Having reviewed the court's findings of fact for clear error and its conclusions of law de novo, see Daniel v. Security Pac. Nat. Bank (In re Daniel), 771 F.2d 1352, 1353 (9th Cir.), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), we reject these challenges. We affirm the judgment both as to the revocation of Dietz's discharge and as to the liability of the nine payees to make repayments to the estate.
 
 A. Revocation of Discharge
 
 7
 The bankruptcy code provision under which Mitchell brought this action states that on request of a trustee the court shall revoke a discharge if
 
 
 8
 the debtor acquired property that is property of the estate ... and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee....
 
 
 9
 11 U.S.C. Sec. 727(d)(2). Courts have interpreted this section to require that the trustee must have learned of the debtor's fraud after discharge had been granted. See, e.g., Werner v. Puente (In re Puente), 49 B.R. 966, 969 (Bankr.W.D.N.Y.1985); In re Lyons, 23 B.R. 123, 125-26 (Bankr.E.D.Va.1982).[4] Dietz claims that Mitchell's request for revocation was insufficient for two independent reasons: first, there was nothing to revoke since the court had never entered an order of discharge; second, Mitchell knew before the date of discharge the facts on which he based his request for revocation. Neither of these contentions has merit.
 
 
 10
 1. Revocation in the absence of formal discharge
 
 
 11
 Although the bankruptcy court had not formally entered an order of discharge at the time Mitchell requested revocation, it did not err by considering the request. See In re Meo, 84 B.R. 24, 28 (Bankr.M.D.Pa.1988) (explicitly permitting creditor to seek revocation after 60-day period had closed without objection, and no formal discharge had occurred). By "deem[ing the discharge] to have been entered" on February 15, 1985, the court acted consistently with the spirit of the bankruptcy rules, which contemplate that discharge is effective immediately upon expiration of the 60-day period following the creditors' meeting, so long as no objections are filed. See Bankr.Rule 4004(c); B. Weintraub and A. Resnick, Bankruptcy Law Manual, p 3.04 at 3-19 (rev. ed. 1986) (noting that in the absence of timely objections discharge is "automatic" and "a matter of course").
 
 
 12
 2. Date on which Mitchell acquired relevant information
 
 
 13
 Nor did the bankruptcy court clearly err by finding that Mitchell learned of the basis for revocation only after February 15, 1985, the effective date of discharge. Although Mitchell became aware in January[5] that the Virginia account existed and that Dietz had written a check on that account to an Airbrush employee, Mitchell did not know that the funds in the account were estate assets. Indeed, Dietz had informed Mitchell that the funds in the account were the proceeds of a loan. According to Mitchell's testimony, it was not until February 18, 1985, when he received official records from the Virginia bank, that he realized the account predated Dietz's involuntary bankruptcy and contained money belonging to the estate. Thus, sufficient evidence supported the finding that Mitchell learned of the critical fact--Dietz's unauthorized use of estate funds--after the effective date of discharge.
 
 B. Liability of Virginia Account Payees
 
 14
 The bankruptcy code provisions under which Mitchell proceeded against the Virginia account payees allowed him, as trustee, to "avoid" unauthorized transfers of estate property, and to recover that property from the initial transferee, or from any subsequent transferees who did not prove that they received the property in good faith, for value, and without knowledge of the voidability of the transfer. See 11 U.S.C. Secs. 549(a), 550(a) and (b). The Virginia account payees claim that Mitchell's attempted recovery must fail, first, because he filed the actions after Dietz's discharge became effective; and, second, because the payees were initial transferees and received the property in good faith. Both of these arguments are incorrect.
 
 
 15
 1. Timeliness of Mitchell's recovery actions
 
 
 16
 Contrary to the payees' argument, the date of discharge was irrelevant to the time limit for Mitchell's recovery actions. The code entitled him to sue for recovery at any time before the case was closed, or before one year after the avoidance of transfer, whichever occurred sooner. See 11 U.S.C. Sec. 550(e). The record shows that the case was still open when Mitchell brought his actions on April 16, 1985. Further, since Mitchell sought both avoidance and recovery in the same complaints, his recovery actions were, of course, within a year of transfer avoidance.[6]
 
 2. Payees' status and good faith defenses
 
 17
 In the face of the bankruptcy court's finding that Dietz himself was the initial transferee and the payees subsequent transferees, both Mitchell and the payees argue on appeal that the payees were initial transferees. In light of the parties' agreement, we have assumed, without deciding, that the payees were indeed the initial transferees of the estate property in question. From this premise, it follows that the payees' attempts to establish good faith defenses are irrelevant. As initial transferees, they were not entitled to assert good faith defenses to Mitchell's recovery actions. Compare 11 U.S.C. Sec. 550(a) with id. at Sec. 550(b). Thus, to dispose of the payees' appeal on this point, we need not consider whether the bankruptcy court erred in finding their good faith defenses inadequate.[7]
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The bankruptcy rules provide that interested parties may object to discharge within 60 days after the meeting of creditors, and that, if there is no objection within that period, the court "shall forthwith grant the discharge." Bankr.Rule 4004
 
 
 [2]
 Mitchell phrased his request in the alternative because, although Dietz had become entitled to discharge, the court had not yet entered a formal order
 
 
 [3]
 As an alternative ruling, the court determined that the discharge had not yet occurred when Mitchell filed his complaint, and then denied the discharge. Because we uphold the court's decision on revocation, we do not reach this ruling
 
 
 [4]
 In adopting a rule that the trustee may only secure revocation of the discharge for fraud that he or she discovers after the discharge, neither Puente nor Lyons was faced with a situation where a trustee learns of the debtor's fraud such a short time before the granting of the discharge that there is no effective opportunity to enter a timely objection to the discharge. Cf. In re Meo, 84 B.R. 24, 28 (Bankr.M.D.Pa.1988) ("when the misconduct is discoverable in time to allow a creditor or the trustee to object to discharge or request an extension of time to do so within the 60 days of the date first set for a meeting of creditors, the bar date of Rule 4004(a) governs"). We, too, are not presented with that question, and we express no opinion on it
 
 
 [5]
 The only evidence that Mitchell learned of the Virginia account earlier than January came in the testimony of Larry Wrenn, which Mitchell disputed. The court expressly found Mitchell more credible than Wrenn on this subject. Like the Bankruptcy Appellate Panel, we shall not disturb the trial court's assessment of relative credibility
 
 
 [6]
 Mitchell's complaints were also timely as petitions for avoidance. He filed them before the case was closed and before two years after the date of the transfers. See 11 U.S.C. Sec. 549(d)
 
 
 [7]
 In any case, review of the bankruptcy court's decision on these defenses would be impossible, since, as the Bankruptcy Appellate Panel noted, the payees did not include in the record on appeal a transcript of the relevant proceedings. Moreover, in their brief to this Court, the payees have not cited a single piece of evidence to support a finding of good faith receipt