In re Gwendolyn JACKSON, Debtor.

Marshall H. WATSON, Plaintiff,

v.

Gwendolyn JACKSON, Defendant.

Bankruptcy No. B–90–13724–PHX–GBN.
Adv. No. 91–861–GBN.

United States Bankruptcy Court,
D. Arizona.

July 8, 1992.

Louis B. Schaeffer, John F. Emerson, Phoenix, Ariz., for plaintiff.

Gwendolyn Jackson, pro se.

Jon N. Vogel, Vogel & Damore, Scottsdale, Ariz., for trustee.

Adrianne Kalyna, Phoenix, Ariz., U.S. Trustee.

## MEMORANDUM OF DECISION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

Debtor Gwendolyn Jackson filed a Chapter 7 bankruptcy petition within the District of Arizona on December 31, 1990. A discharge was granted on May 20, 1991. Docket No. 29. On June 12, 1991, her mother died, leaving a will that devised a Phoenix residence to debtor. The will appointed Ms. Jackson as personal representative. Following her mother's death, debtor distributed her mother's vehicle and furniture to her brothers, as required by the will. The residence is the only asset remaining to be distributed.

Plaintiff, Marshall H. Watson, is a creditor with a Maricopa County, Arizona, Superior Court judgment of $118,108.00. On August 20, 1991, plaintiff conducted an examination of debtor under Bankruptcy Rule 2004, and discovered debtor's inheritance. Docket No. 36. Plaintiff filed a complaint to revoke debtor's discharge under 11 U.S.C. § 727(d)(2) on September 17, 1991.

On September 5, 1991, debtor amended her schedules to reference the inheritance for the first time. The amendment occurred after plaintiff stated his intent to file a complaint to revoke debtor's discharge for willful concealment of property. To date, debtor has not filed her mother's will for probate or sought appointment as a personal representative of her mother's estate.

### I

Plaintiff contends the discharge should be revoked for a knowing, fraudulent failure to report entitlements under the will, as well as failure to deliver or surrender the property to the trustee.

Debtor, not represented by counsel at trial, denies she knowingly and fraudulently failed to report or surrender property.

Since testimony and exhibits were received as evidence, findings of fact and conclusions of law are required. Rule 7052, FED.R.BANKR.P. This memorandum will serve as the Court's findings and conclusions. Rule 52(a), FED.R.CIV.P. This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(J). Accordingly, the Court will enter a final judgment. Any aggrieved party has ten days to perfect an appeal to either the United States District Court for the District of Arizona or the Bankruptcy Appellate Panel of the United States Court of Appeals for the Ninth Circuit. Rule 8002(a), FED.R.BANKR.P.

### II

Ms. Jackson identified Exhibit A as her December 31, 1990 Chapter 7 petition which was signed by her attorney. After her August 20, 1991, 2004 examination, her counsel withdrew.

Debtor works as a supervisor in Maricopa County Superior Court, where she is responsible for 15 employees. She has occupied this job for 14 years. Earlier, she served as a data entry operator for 10 months at the court. She has previous employment with the Maricopa County Hospital, the State Fish and Game Commission, and a private employer. Since 1969, her employment has largely been computer or data based.

She identified Exhibit B as her bankruptcy schedules. Schedule A–2 lists plaintiff's debt of $141,546. Exhibit D is plaintiff's August 21, 1986, state complaint, No. C–600737. The complaint alleges fraud and breach of fiduciary duty. Plaintiff charged Ms. Jackson utilized his money and credit cards for her own personal benefit. Exhibit E is the judgment resulting from a two week jury trial. The jury awarded plaintiff $108,108, $10,000 in punitive damages, interest, attorney's fees and costs.

Plaintiff is Ms. Jackson's uncle by marriage. During the parties' dealings, he was in his early 70's and supported himself by retirement income and lawn work. Mr. Watson can only write his own name.

Debtor's schedules list her real estate, including her home, a rental property and a residence previously owned by Mr. Watson that he transferred to Ms. Jackson and her daughter. Exhibit B. Exhibit F is the February 11, 1986, quit claim deed from plaintiff.

Ms. Jackson's February 14, 1992, response to plaintiff's pretrial order reflects she learned in an April, 1991 letter from her attorney that a discharge could be revoked. Exhibit J. She concedes that at the beginning of her representation by counsel, it is probable disclosure requirements were discussed.

Exhibit B schedules $9,368 in personal property, including an automobile valued by debtor at $8,075 and $150 in a bank account. Deducting the latter two items, Ms. Jackson believed she owned approximately $1,300 in personalty at the filing date.

Exhibit K is an insurance premium notice of July 15, 1991 for her residence. Besides real estate coverage of $89,100, insurance for $66,825 in personal property is provided. The period of coverage is August of 1991 through August of 1992. Exhibit M is another insurance premium notice providing coverage from August 29, 1989 to August 29, 1990. Ms. Jackson cannot explain the discrepancy between the personal property valuations contained in her policies and the valuations in her bankruptcy schedules. She notes her insurance agent prepared the policy valuations.

In her August, 1991, deposition, Exhibit N at page 51, she testified she had no objection to the agent's values. She felt the agent knew what he was doing. To date, she has not decreased her personal property coverage under the policies. Debtor assumes the agent's valuations are based on his personal inspection.

Ms. Jackson's mother was hospitalized on Memorial Day, 1991, and died on June 12, 1991. Exhibit O is her last will, appointing debtor her personal representative. The will grants Ms. Jackson her mother's Magnolia Street home. Debtor read the will to her brothers and, in June of 1991, distributed their bequests. She has not filed the will for probate. She concedes her office desk is about 15 feet away from county probate facilities.

Debtor believes she mentioned her mother's bequest in a telephone conversation with her attorney. The purpose of the call was not the inheritance but another subject. Ms. Jackson does not recall her attorney's response. She believed her counsel would disclose this inheritance in the bankruptcy, if appropriate. She does not know if counsel did so.

At the 2004 examination, Ms. Jackson's counsel did not indicate he had forgotten to amend the schedules. Exhibit C is her September 5, 1991 amended bankruptcy schedules, listing the Magnolia property for the first time. This amendment occurred after her examination.

Exhibit P lists the items she was to bring to her examination. She cannot recall if a deed from her mother to herself was among the documents she brought. The

deed was not discussed in her deposition. She has no idea why she would not bring her mother's will to the deposition. She does not know if she did so.

Debtor became a signatory on her mother's checking account upon her parent's hospitalization. Exhibit P, paragraphs 4 and 5, reflects she was to bring checking account information on all accounts in which she had an interest. Ms. Jackson did not produce information on her mother's checking account at her deposition. Exhibit R is the mother's bank statement, reflecting on August 7, 1991, two weeks prior to the 2004 examination, her name was on decedent's account. She made a withdrawal from this account one day before her deposition. She does not know why she did not provide this information, other than to speculate she was busy and this period was traumatic for her.

Page 55 of her deposition reflects her testimony that paychecks, family support and rental income were the only source of deposits into her personal account. At the deposition, there were several deposits Ms. Jackson could not initially identify. Debtor repeatedly insisted the only source of deposits was pay, support or rental checks. At trial, she acknowledges this was not true. Her mother's account was another source for deposits. Later in the deposition, she disclosed her control of the mother's account.

Exhibit S is a December 1, 1991 letter to Ms. Jackson from the trustee's attorney. This document requests debtor to execute papers to transfer the Magnolia property to the trustee. Ms. Jackson has not done so.

She consulted real estate broker Charles Jackson concerning listing the Magnolia property for sale. She did not formally list the property, however. At her deposition, she stated she changed her mind and her daughter was allowed to occupy the property.

### III

She emphasized in cross-examination that the insurance forms reflect inclusion of inflation provisions. She believes replacement values were selected by the agent. Her bankruptcy schedules, by contrast, reflect her guess as to the current value. She does not believe the Magnolia house is formally hers, although it was granted to her in the will. The will is not probated because other family duties demand her time. Although plaintiff cannot read or write, she does not believe he is senile or a true creditor. She became a signatory on her mother's account in May, when the account had several hundred dollars in it. At her mother's death, Ms. Jackson had to immediately write funeral checks from this account. This account was also used to reimburse Ms. Jackson for expenses paid with personal funds. Later, Ms. Jackson discovered her mother borrowed $500 from a neighbor. She took her mother's death benefit, paid the neighbor, and reclaimed an automobile pledged as security. Decedent's account is now overdrawn.

She has not turned the Magnolia property over to the trustee as she is unsure of the propriety of this demand. She has never before probated an estate and thinks there is a 180–day waiting requirement before probated real estate can be transferred. She believes plaintiff is over zealous, as she lacks any money to repay this debt. Her former spouse assists her financially, since she is a working single parent with four children.

### IV

Under § 727(d)(2), the court shall revoke a discharge if "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee...." *See Ross v. Mitchell (In re Dietz)*, 914 F.2d 161, 163 (9th Cir.1990).[1] A right to a discharge is

---

1. In the present case, debtor received an interest in the residence that was property of the estate, because debtor became entitled to acquire the real estate within 180 days of filing her petition

left to the sound discretion of the Bankruptcy Court. *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984).

■ Generally, a debtor acting in reliance on the advice of counsel lacks the intent required to be denied a discharge. *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir.1986). Any such reliance must be in good faith, however. *Supra.* Although a discharge and fresh start are fundamental to bankruptcy, they are intended only for honest debtors. *Citibank South Dakota v. Dougherty (In re Doughery),* 84 B.R. 653, 657 (9th Cir. BAP 1988). While § 727 is construed liberally for debtors and strictly against objectors, *In re Adeeb,* 787 F.2d at 1342, a debtor has no fundamental, constitutional right to a discharge. *Grogan v. Garner,* — U.S. —, —, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Concealment of assets alone is sufficient to deny discharge. Lack of injury to creditors is irrelevant. *Adeeb,* 787 F.2d at 1343.

### V

■ This Court weighs the credibility of witnesses. Debtor is a mature, intelligent, knowledgeable, professional person of long-standing employment in a supervisory position with a court system. She is not naive. Her generalized allegations that she provided information concerning her inheritance to her attorney during a telephone conversation on an unspecified date lack credibility. Debtor concedes the requirement to disclose the inheritance was discussed with counsel. Her failure to bring relevant paperwork to the deposition and unforthcoming testimony concerning existence of the inheritance, access to the mother's bank account and repeated denials of sources of income further damage her credibility. Plaintiff has established a *prima facie* case. Debtor's failure to respond with credible evidence means she cannot prevail. *Aubrey v. Thomas (In re Aubrey),* 111 B.R. 268, 273 (9th Cir. BAP 1990). This is not a case where debtor has voluntarily revealed the transfer and recov-

ered substantially all the property for the estate. *Adeeb,* 787 F.2d at 1345–46.

The failure to promptly amend schedules to list the inheritance, supported by the circumstantial evidence of a failure until late in the deposition to disclose information, evidences the requisite wrongful intent. The Court finds for plaintiff and against defendant and will revoke the discharge.

by bequest, devise or inheritance. *See* 11 U.S.C. § 541(a)(5).