**In re Claude EMERY, Debtor.**

**CITIBANK, N.A., Plaintiff–Appellee,**

**v.**

**Claude EMERY, Defendant–Appellant.**

**No. 275, Docket 96–5121.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1997.

Decided Jan. 5, 1998.

Richard K. Bernstein, New York City, for defendant-appellant.

Marc A. Lebowitz, New York City (Zeichner Ellman & Krause, Robert M. Brill, Lee A. Weiss, of counsel), for plaintiff-appellee.

Before: WINTER, Chief Judge, FEINBERG, Circuit Judge, and BAER, District Judge.*

---

* Honorable Harold Baer, Jr., United States District Judge for the Southern District of New York, sitting by designation.

1. Rule 4004 currently provides, in pertinent part:

   (a) Time for filing complaint objecting to discharge; notice of time fixed

   In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).

   .    .    .    .    .

   (b) Extension of time

FEINBERG, Circuit Judge:

Defendant Claude Emery appeals from an order of the United States District Court for the Eastern District of New York, Joanna Seybert, J., which reversed the holding of the bankruptcy court, Marvin A. Holland, J., that plaintiff-appellee Citibank, N.A. (Citibank) had failed to state a claim (based upon Emery's alleged fraud) for revocation of Emery's bankruptcy discharge. Citibank had obtained knowledge of the alleged fraud in the period after the bar date for creditors' objections to discharge, but prior to the actual grant of discharge. The principal basis of the bankruptcy court's decision was 11 U.S.C. § 727(d), which precludes a creditor from seeking revocation of a discharge if it had knowledge of the fraud before the discharge. The district court reversed, finding that § 727(d) did not bar Citibank's request for revocation under the circumstances of the case. For the reasons stated below, we affirm.

## I. Background

Emery filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 16, 1991. Pursuant to 11 U.S.C. § 341(a), the first scheduled meeting of his creditors commenced on July 12, 1991. Under Bankruptcy Rule 4004(a), Emery's creditors then had 60 days—or until September 10, 1991 (the Bar Date)—to object to Emery's discharge.[1] Bankruptcy Rule 4004(c) requires that a discharge be granted "forthwith" after a bar date has passed. Despite this requirement, Emery did not actually receive a discharge until November 29, 1991 (the Discharge Date), or 80 days after the Bar Date.

On motion of any party in interest, after hearing on notice, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

(c) Grant of discharge

(1) In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge ... the court shall *forthwith* grant the discharge unless ... (b) a complaint objecting to the discharge has been filed, ... [or] (e) a motion to extend the time for filing a complaint objecting to discharge is pending ....
(emphasis supplied).

The instant suit arises out of Citibank's claim that Emery attempted to conceal his involvement with certain partnerships and joint ventures. Citibank alleges that Emery made fraudulent representations and omissions both in the schedules filed with his petition and in his responses to creditors at his § 341 examination. Citibank claims that as a result of Emery's fraud, it did not have sufficient facts as of the Bar Date (September 10, 1991) to frame an objection to discharge.

In early September, Citibank requested Emery's consent to an extension of the Bar Date. When Emery refused, Citibank did not seek an extension from the bankruptcy court pursuant to Bankruptcy Rule 4004(b). See note 1. Citibank did, however, continue to investigate. The bankruptcy court found that Citibank had at least constructive knowledge of Emery's alleged fraud on or before November 18, 1991, eleven days before the Discharge Date.

On November 25, *1992*, Citibank filed a complaint to revoke Emery's discharge pursuant to § 727(d).[2] This was within one year from the Discharge Date (November 29, 1991), which is the limitations period established for § 727(d) actions by § 727(e). See note 2. This complaint was dismissed for failure to plead fraud with particularity. Citibank obtained leave to replead and thereafter filed a Second Complaint. Emery moved to dismiss the Second Complaint for failure to state a cause of action. In August 1994, the bankruptcy court granted the motion to dismiss, holding that the plain language of § 727(d), see note 2, foreclosed relief because Citibank had knowledge of Emery's fraud prior to the Discharge Date, and that Citi-

bank was not entitled to equitable relief because Citibank should have sought an extension of time pursuant to Rule 4004(b) in which to object to discharge under § 727(c).

In September 1996, the district court reversed, holding that if knowledge of fraud was obtained in the period after the Bar Date but before the Discharge Date (the Gap Period), the Discharge Date should be imputed back to the Bar Date so that the court's ministerial delay in granting a discharge did not create an unintended period of immunity for fraudulent debtors. The district court also held that for purposes of application of the one-year limitations period of § 727(e), see note 2, the date that Citibank commenced its proceeding to revoke discharge should also be adjusted back by the same number of days because of the lack of clarity in this area of the law. Emery thereafter appealed to this court.

At oral argument, we expressed doubt as to whether we had jurisdiction over the appeal. Thereafter, at our suggestion, Emery obtained a § 1292(b) certification from the district court and we hereby permit the appeal to be taken.

## II. Discussion

■ The issue before us is whether Citibank's proceeding to revoke discharge under § 727(d) is barred because it acquired knowledge of fraud in the Gap Period. We must also determine whether such knowledge has any effect on the time limit for suit specified by § 727(e). This appeal grows out of Emery's motion to dismiss for failure to state a claim upon which relief can be granted. Therefore, Citibank's allegations are accept-

---

**2.** Section 727 provides, in pertinent part:
  (a) The court shall grant the debtor a discharge, unless—

  .    .    .    .    .

  (4) The debtor knowingly and fraudulently, in or in connection with the case—
  (A) made a false oath or account[.]

  .    .    .    .    .

  (c)(1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.

  (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a

hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
  (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[.]

  .    .    .    .

  (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—
  (1) under subsection (d)(1) of this section within one year after such discharge is granted[.]

ed as true and Citibank is entitled to the benefit of all permissible inferences. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). We review the bankruptcy court's factual findings for clear error, and its conclusions of law de novo. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990).

## A. The Effect of Post–Bar Date, Pre–Discharge Date Knowledge

■ Under § 727(c), a creditor may object to the granting of a discharge on the grounds set forth in § 727(a), which include fraud. As already indicated, however, the time in which a creditor may object to discharge is limited by Rule 4004(a). That rule, see note 1, specifies that a creditor has 60 days from the date set for the first examination under § 341 in which to file an objection to discharge. Once that date has passed, Rule 4004(c) provides that "the court shall *forthwith* grant the discharge" (emphasis added). Once a discharge has been granted, a creditor may obtain revocation under § 727(d) if a creditor can prove both that the discharge was obtained through fraud and that the creditor had no knowledge of the fraud until after the discharge was granted. See, e.g., *In re Ginsberg*, 164 B.R. 870, 876 (Bankr. S.D.N.Y.1994).

The Bankruptcy Code and the Bankruptcy Rules obviously contemplate a unitary concept: If a creditor knows of a debtor's fraud before a bar date, the creditor should object to discharge. If there are no objections to discharge by the bar date, the bankruptcy court should grant discharge forthwith. A creditor then has a year to bring an action to revoke the discharge based upon knowledge of fraud obtained after the discharge date. In other words, Congress has provided the remedy of denying discharge to a fraudulent debtor from the beginning of a case until one year after discharge.

In the ordinary case, this scheme makes good sense. However, the problem with it is that a busy bankruptcy court sometimes does not grant a discharge "forthwith" after a bar date has passed and does so only after a considerable period—here 80 days—has gone

by. The existence of such a gap period creates the situation we have in this case. The Bar Date passed on September 10, 1991. If discharge had been granted right away, Citibank would not have known of Emery's fraud until over two months after the discharge. Therefore, the stricture of § 727(d) that Citibank "not know of such fraud until after the granting of such discharge" would not have barred its action.

Emery understandably argues principally that the plain language of § 727(d) precluded Citibank's proceeding to revoke his discharge because it was aware of his alleged fraud by November 18, 1991, which was *before* the Discharge Date of November 29, 1991. Emery relies heavily on *Powell v. First Bank of Nashville, Arkansas*, 113 B.R. 512 (W.D.Ark. 1990), in which a court facing a situation similar to ours held that the plain language of Rule 4004 and § 727(d) foreclosed any remedy, stating that "[i]t is true that it is difficult, perhaps impossible, to imagine why [Congress and the Supreme Court] would have wanted [this result] ... [b]ut the court does not conceive it to be its job to rationalize the statute and the rule." *Id.* at 513.

Nonetheless, we agree with the district court that dismissal of Citibank's complaint was inappropriate in this case. It is true that the plain language of § 727(d) would ordinarily preclude a suit to revoke a discharge where a creditor had knowledge of fraud prior to the applicable discharge date. *Ginsberg*, 164 B.R. at 876. The Supreme Court has stated that "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). However, the Court also made clear in *Ron Pair* that a court may depart from the plain language if "literal application of the statute will produce a result demonstrably at odds with the intentions of [the statute's] drafters." *Id.* at 242, 109 S.Ct. at 1030–31.

Emery argues to us, in effect, that because of the Gap Period of 80 days, Citibank can do nothing about the fraud it alleges and which, on a motion to dismiss, we must assume

existed. Thus, according to Emery, because the discharge was not entered forthwith, Citibank had knowledge of fraud before the delayed Discharge Date (November 29, 1991) and was barred by § 727(d) from moving to revoke the discharge. However, we do not believe that Congress intentionally drafted a statute to punish fraudulent conduct by debtors that at the same time provides a period of immunity for such debtors. We agree that the literal application of § 727(d) here cannot have been intended by Congress and the Supreme Court. *See, e.g., In re Dietz,* 914 F.2d 161, 164 (9th Cir.1990) (court acted "consistently with the spirit of the bankruptcy rules," which contemplate immediate discharge after a bar date); *In re Stevens,* 107 B.R. 702, 706 (9th Cir. BAP 1989) ("the rights of parties ... would be unreasonably frustrated, if Rule 4004 were read to create a temporary period when no ... complaint under § 727 could be brought"); *In re Staub,* 208 B.R. 602, 606–7 (Bankr.S.D.Ga.1997) ("rational sense" requires that there be no "safe haven gap period"). Nothing in the Bankruptcy Code itself indicates an intention to create immunity during a gap period. Sections 727(c) and 727(d), taken together, clearly contemplate that diligent creditors will have a remedy against fraudulent debtors.

Emery argues that the use of "forthwith" in Bankruptcy Rule 4004(c) contemplates a period of immunity because there is always the possibility of delay in the performance of a ministerial task. This argument is unconvincing. The primary meaning of "forthwith" is "immediately, without delay." Black's Law Dictionary 654 (6th ed.1990). Of course, delay is always a possibility. It is clear, however, that neither Congress nor the Supreme Court intended such delay. Rather, a gap period is the direct result of the inability of the bankruptcy court system to comply with Rule 4004(c)'s mandate that a discharge be entered "forthwith" after a bar date has passed. See generally *In re Anwiler,* 958 F.2d 925 (9th Cir.1992) (surveying cases in which a bankruptcy court used its equitable powers under Bankruptcy Code § 105 to avoid prejudicing litigants for ministerial mistakes).

The bankruptcy court held that equitable grounds for disregarding the plain language of § 727(d) in this case were not compelling in view of Citibank's failure to seek an extension of the Bar Date. The bankruptcy court apparently reasoned that a creditor is obliged to make use of Rule 4004(b) to seek an extension of the bar date if it has suspicions of fraud, even if those suspicions do not amount to constructive or actual knowledge. We do not agree. A rule barring a creditor for failing to seek an extension of the bar date in those circumstances would pressure creditors to move for precautionary extensions of the bar date based on the slightest suspicion, and thus interfere with the Bankruptcy Code policy in favor of a prompt discharge for deserving debtors.

In sum, for the reasons stated above we hold that on this record, § 727(d) did not preclude Citibank's suit.

B. The Timeliness of the Complaint under § 727(e).

■ There is still the question whether Citibank complied with the one-year limitations period of § 727(e). As already indicated, the district court imputed the Discharge Date back to the Bar Date, which was September 10, 1991. Emery argues that on this theory, Citibank's action was untimely since it was not actually brought until November 28, 1992, well over a year after the imputed Discharge Date. The district court resolved this problem by making a "corresponding adjustment" (apparently 80 days, although the district court did not specify in more detail) to the date that Citibank began its adversary proceeding. The district judge's rationale was that this would "prevent a creditor, who commenced [an] adversary proceeding within one year of the nominal date of discharge, from being prejudiced through the absence of clarity in the law."

■ We see no need to make such an "adjustment." In II–A above, we conclude that on the facts of this case the district court correctly held that § 727(d) did not bar Citibank's action because doing so would lead to an absurd result that Congress could not have intended. Citibank did bring its action on November 25, 1992, within a year after

the actual date of discharge (November 29, 1991). It could not have had notice that the district court was going to shorten the one-year limitations period by moving the Discharge Date back 80 days, and we agree with the district court that in the circumstances here Citibank should not be prejudiced by the lack of clarity with respect to the effect of the Gap Period. We therefore hold that the § 727(e) limitations period continued to run from the actual date of discharge and that Citibank's action was therefore timely. We also hold that in future cases involving a gap period this statute of limitations will run from the actual date of discharge.

We have considered all of Emery's arguments and find them to be insufficient reason for reversal. We affirm the order of the district court and remand the case for further proceedings consistent with this opinion.