### In re DAMACH, INC., Debtor.

### Bankruptcy No. 98–25179.

United States Bankruptcy Court, D. Connecticut.

July 7, 1999.

---

Jeffrey A. McChristian, Krass & McChristian, LLC, Avon, CT, for Damach, Inc., debtor.

Rita Provatas, Tobin, Carberry, O'Malley, Riley & Selinger, P.C., New London, CT, for IC Investment Corp., lessor.

*RULING ON DEBTOR'S MOTION FOR "ASSUMPTION OF LEASE, NUNC PRO TUNC"*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

## I.

### *ISSUE*

Bankruptcy Code § 365(d)(4) requires a debtor, as the lessee, to seek court authority to assume a lease of nonresidential property within 60 days after the date of an order for relief, or the lease is deemed rejected.[1] The question in this proceeding, submitted by the parties on affidavits[2] and briefs, is whether the circumstances averred permit the court to allow assumption of a lease where the debtor moved for assumption 175 days after the order for relief. After considering the pleadings, the affidavits, the statute and the relevant decisional law, the court concludes the debtor's motion for assumption must be denied.

## II.

### *BACKGROUND*

Damach, Inc., the debtor in possession in this Chapter 11 case ("the debtor"), is the owner and operator of a bar and cabaret leased from IC Investment Corp. ("the lessor") at premises located at 50 Union Place, Hartford, Connecticut ("the premises"). The debtor filed a voluntary bankruptcy petition under Chapter 11 on November 12, 1998, at which time an order for relief entered. *See* Bankruptcy Code § 301 ("the commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter").

On the date of filing, the debtor was in default of lease payments for five months in the total amount of $56,555.05. The lease, dated October 1, 1994, has an initial five-year term, expiring September 14, 1999, with an option to renew for an additional five years. Neal S. Factor, Esq. ("Factor") was the debtor's pre-petition attorney, and the court, on November 16, 1998, entered an order approving his post-petition employment by the debtor.

The lessor, on February 12, 1999, filed a motion for immediate possession of the premises, or, in the alternative, for relief from stay, asserting that the debtor had neither timely assumed the lease nor sought to extend the time for such assumption. The debtor, on March 23, 1999, filed an undated motion for a 60-day extension of the time within which to assume or reject the lease. This motion alleged that Factor, as the debtor's attorney, had failed to serve the motion sooner because of the "illness and subsequent hospitaliza-

---

1. Section 365(d)(4) provides: "... in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

2. Fed.R.Civ.P. 43(e), made applicable by Fed. R.Bankr.P. 9017, provides: "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties...."

tion of [Factor's] secretary." (Motion at 2.) An affidavit of David Squillante, the debtor's president, accompanied the motion in which he averred that a 60–day extension was necessary in order for the debtor to prepare a plan of reorganization. The debtor never pursued a hearing on this motion, and the motion is deemed abandoned.

The court, on April 9, 1999, and at the debtor's request, approved the employment of Krass & McChristian, LLC ("K & McC") as debtor's counsel in place of Factor. K & McC, on May 6, 1999, filed a motion on behalf of the debtor seeking court approval of the assumption of the lease "nunc pro tunc" ("the assumption motion"). The debtor's memorandum of law in support of the assumption motion stated lease assumption approval was warranted "in light of the equities of the situation and the excusable neglect of [debtor's] former counsel in failing to timely move to do so within the 60–day period under 11 U.S.C. § 365(d)(4)." (Debtor's Mem. at 1.)

Factor's affidavit, attached to the assumption motion, avers that, on January 8, 1999, he prepared a motion to extend time to assume the lease and instructed his secretary to mail the motion to the court; that it was only when he received the lessor's motion for surrender of the premises that he became aware that the motion was not filed; that the secretary has since left Factor's employ and refuses to contact him; that he (Factor) has been diagnosed with clinical depression and is under medication which, *inter alia*, affects his "attention to detail"; and that he makes "these statements not as an attempt to deny responsibility for missing a deadline, but to put into a proper context any failure to follow up on the filing of the Motion To Extend Time to Assume or Reject Lease." (Factor's Aff. at 2.)

The debtor's memorandum further contends that the court should grant the assumption motion "based on equitable principles and because the lessor has waived its right to enforce the application of the 60–day rule ... by knowingly accepting rent beyond the 60–day period." (Debtor's Mem. at 7.)

The lessor filed an objection to the assumption motion asserting that "excusable neglect" may not be invoked to expand a time limitation imposed by statute; that the lessor did not waive, but rather promptly sought, to enforce the 60–day automatic rejection provision; and that even if the court were to apply the "excusable neglect" standard, the facts of this proceeding do not support its application. The lessor's objection included an affidavit of Young K. Park ("Park"), the lessor's property manager. Park averred that the debtor has consistently been behind in its lease obligations, including rent; that the debtor's rent checks routinely were returned for insufficient funds; that the lessor has no intention to renew the lease; that the debtor is currently prosecuting a zoning appeal for a permit to conduct an "adult night club and strip bar" and that the lessor has potential buyers for the property who will only purchase when the debtor vacates the premises. (Park's Aff. at 3–4.)

### III.

### DISCUSSION

The parties do not dispute that the plain language of § 365(d)(4) provides for automatic rejection of the unexpired nonresidential lease at the expiration of the expiration of the initial 60–day period or an extension thereof ("the option period"), unless, prior to that time, the debtor has filed a motion either to assume the lease or for a further extension of the option period. The debtor's arguments focus on three doctrines under which, it claims, the court may consider the merits of its motion, despite its untimeliness. These are (1) the doctrine of excusable neglect; (2) the equitable doctrine of waiver; and (3) a doctrine which the court will refer to as "equitable statutory construction." With regard to each of these doctrines, the court must

determine (1) whether the doctrine may be applicable to proceedings under § 365(d)(4); (2) if so, what requirements must be satisfied for its application; and (3) whether the facts and circumstances of the present proceeding satisfy these criteria.

## A. Excusable Neglect

■ In support of its "excusable neglect" argument, the debtor cites Fed.R.Bankr.P. 9006(b)[3] and Fed.R.Civ.P. 60(b)[4], made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 9024. Neither of these rules, however, permits a court to extend a time limitation set by Congress in a statute; they permit modification only of time limitations imposed by other rules or by the court. *See, e.g., In re Federated Food Courts, Inc.*, 222 B.R. 396, 397 (Bankr.N.D.Ga.1998) ("... Bankruptcy Rule 9006(b) does not give the court the authority to enlarge the deadline in § 365(d)(4).").

The debtor urges the court to dismiss the holdings such as *Federated Food Courts* as based on a "hyper technical parsing," (Debtor's Mem. at 5), of the Supreme Court's holding in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The court finds this argument to be without merit. The significance of *Pioneer* was its adoption of a four-factor test for determining whether the reasons for an untimely filing under Fed.R.Bankr.P. 9006(b) constituted excusable neglect under the rule. The debtor argues that the court should expand the applicability of the excusable neglect exception to the statutory deadline imposed under § 365(d)(4). While the debtor's memorandum cites numerous cases involving application of the excusable neglect criteria of *Pioneer*, they are inapposite to its argument since all involved extensions of deadlines imposed by rules, not statutes.[5]

The court finds that the automatic termination of leases under § 365(d)(4) is a substantive, rather than procedural, matter, and that it may not, therefore, be modified or extended by either the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure. The statutes authorizing the Supreme Court to adopt such rules specifically prohibit the rules from abridging, enlarging or modifying any substantive rights. 28 U.S.C.

---

**3.** Fed.R.Bankr.P. 9006(b) provide, in relevant part:

(b) Enlargement
(1) In general
Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by *these rules* or by a *notice* given *thereunder* or by *order of court*, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.*
Fed.R.Bankr.P. 9006(b) (emphasis added).

**4.** Fed.R.Civ.P. 60(b) provides, in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a *final judgment, order, or proceeding* for the following reasons: (1) mistake, inadvertence, surprise, or *excusable neglect;* ...
Fed.R.Civ.P. 60(b) (emphasis added).

**5.** None of the cases cited in the debtor's memorandum supports its argument for applying the *Pioneer* criteria to extend the statutory deadline; the cited cases applied *Pioneer* only to deadlines imposed by the rules. *Raymond v. Int'l Business Machines Corp.*, 148 F.3d 63 (2d Cir.1998) (Fed.R.Civ.P. 38(b)); *LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir.1995) (D.Conn.L.Civ.R. 17); *Brown v. United States*, 985 F.Supp. 86, 88 (N.D.N.Y. 1997) (Fed.R.App.P. 4(b)); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (4th Cir.1997) (Fed.R.Civ.P. 60(b)(1)); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849–50 (11th Cir.1996) (Fed.R.Civ.P. 60(b)(1)); *Information Sys. & Networks Corp.*, 994 F.2d 792, 796 (Fed.Cir.1993) (Fed.R.Civ.P. 60(b)(1)); *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91 (4th Cir.1997) (Fed.R.Civ.P. 60(b)(1)).

§ 2075 (authorizing promulgation of the bankruptcy rules) [6]; 28 U.S.C. § 2072 (authorizing rules for the federal district courts and courts of appeals).[7] Adopting the debtor's interpretation that either Fed. R.Bankr.P. 9006(b) or Fed.R.Civ.P. 60(b) should be construed in such a way as to modify the substantive rights and obligations under Bankruptcy Code § 365(d)(4) would not only be contrary to the plain language of such rules, but would be unenforceable as exceeding the power delegated to the Supreme Court under the respective rules-enabling acts. *See, e.g. In re Stoecker*, 179 F.3d 546 (7th Cir.1999) ("[I]n a conflict between the Code and the rules, the Code controls."); *In re Itel Corp.*, 17 B.R. 942, 944 (9th Cir. BAP 1982) (28 U.S.C. § 2075 "does not permit the rules to conflict with, or supersede, any statutory provision."); *In re Bruzzese*, 214 B.R. 444, 449 (Bankr.E.D.N.Y.1997) ("It is a cardinal rule of construction that when a Rule impermissibly restricts, is inconsistent with, or contradicts the provisions of the Bankruptcy Code, the Rule is invalid.").

The court concludes that the rules do not give it the authority to apply the "excusable neglect" exception to extend the statutory deadline under § 365(d)(4) for automatic rejection of an unexpired lease of nonresidential real property. Because the excusable neglect exception is not available, the court need not consider whether the reason for the late filing satisfies the criteria for excusable neglect set forth in *Pioneer*, although the court notes that the Supreme Court in *Pioneer* stated

that a client could be held accountable for the acts and omissions of its chosen counsel. *Pioneer*, 507 U.S. at 397, 113 S.Ct. 1489.

### B. *Waiver*

Section 365(d)(3) requires the debtor [8] to timely perform all obligations under the lease during the option period, and explicitly states that "[a]cceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights" under either the lease or the Bankruptcy Code provisions. The Bankruptcy Code does not address the question of whether a lessor may subsequently waive its rights under § 365(d)(4) by accepting rent payments from the debtor. The Second Circuit has not yet considered this issue, and those courts that have discussed it are divided. *See In re George*, 177 F.3d 885, 888–89 (9th Cir.1999) (citing decisions representative of the split). However, the court need not reach this issue unless it finds that the lessor's conduct could be construed as a waiver of its rights under § 365(d)(4).

Waiver generally requires a showing that the party against whom it is asserted has intentionally relinquished a known right. *See, e.g. Black's Law Dictionary* 1580 (6th Ed.1990); *South Street Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 763 (2d Cir.1996) (citations omitted) (stating that "waiver requires the intention to relinquish a right."); *In re George*, 177 F.3d at 889–90 (stating that waiver re-

---

**6.** The Bankruptcy Rules are authorized under 28 U.S.C. § 2075, which provides, in relevant part:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules *shall not* abridge, *enlarge or modify any substantive right.*
11 U.S.C. § 2075 (emphasis added).

**7.** Similarly, the Federal Rules of Civil Procedure are authorized under 28 U.S.C. § 2072, which provides, in relevant part:

(a) the Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts . . .
(b) Such rules *shall not* abridge, *enlarge or modify any substantive right. . . .*
28 U.S.C. § 2072 (emphasis added).

**8.** While § 365 refers to a trustee, the debtor in possession has the rights and obligations of a trustee pursuant to Bankruptcy Code § 1107.

quires (1) a right, (2) notice thereof, and (3) the intent to relinquish the right).

The debtor asserts that "the lessor must be deemed to have waived its right to enforce application of the 60–day rule because it has accepted rent after the 60–day period." (Debtor's Mem. at 9.) The court disagrees. Whether the lessor has by its conduct evidenced the intent to relinquish its rights under the automatic rejection provisions of § 365(d)(4) is a question of fact. *In re Lew Mark Cleaners Corp.*, 86 B.R. 331, 335 (Bankr.E.D.N.Y.1988) The debtor makes no claim that the lessor intended to relinquish its right to surrender of the property following its automatic rejection. Although the lessor accepted payments from the debtor subsequent to the expiration of the option period, it also filed a motion to require the debtor to surrender the premises in accordance with the imperative of § 365(d)(4), providing that at the expiration of the option period, "such lease is deemed rejected and the [debtor] shall immediately surrender such ... property to the lessor." 11 U.S.C. § 365(d)(4). The court agrees with the holding in *Lew Mark Cleaners*, 86 B.R. at 335, that "in view of the attempts by the landlord to sever the landlord/tenant relationship, it does not necessarily follow that the acceptance of the rent was a manifestation of the landlord's intent to continue under the terms of the lease. The court finds that the doctrine of waiver cannot be applied in this case."

## C. *Equitable Statutory Construction*

By "equitable statutory construction," the court refers to those cases in which a bankruptcy court finds it necessary to disregard the plain language of a Bankruptcy Code provision in order to avoid what it finds to be an inconsistent and inequitable application, contrary to the intent of the drafters, under the facts of a particular case. Although occasionally justified, the outer limits applicable to the exercise of such equitable powers by bankruptcy courts are narrowly drawn.

*See, e.g. United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (citations omitted); *Citibank, N.A. v. Emery (In re Emery)* 132 F.3d 892, 895 (2d Cir.1998) (applying a non-literal interpretation of § 727(d) to avoid inconsistent results when the facts of a particular case create a "gap" between provisions); *In re Dolan,* 230 B.R. 642 (Bankr.D.Conn.1999) (applying an equitable interpretation to § 522(f)(2)(A) to prevent an unintended shifting of priorities under a particular pattern of liens).

The debtor argues that the court should apply the excusable neglect standards of *Pioneer* as the basis for invoking its power to apply an equitable construction to § 365(d)(4). The court rejects this argument. The criteria for excusable neglect apply only when an excusable neglect exception may apply under the rules, as discussed in section III.A., *supra.* Such criteria, for determining which movants are eligible for an existing exception, are necessarily broader than the criteria for ignoring the plain language of a statute. Although this court found that the facts in *In re Curio Shoppes, Inc.,* 55 B.R. 148 (Bankr.D.Conn.1985) presented a sufficiently egregious situation to permit it to apply an equitable interpretation to the then-recently enacted § 365(d)(4), that holding has been appropriately held to be limited to its facts, and is inapposite to the instant proceeding. *See, e.g. Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1081 (9th Cir.1989). The facts in the matter before the court do not indicate that literal application of the Code would make a forfeiture of the lease "unconscionable." *Curio Shoppes,* 55 B.R. at 153. In *Curio Shoppes,* all rent payments, both before and after the petition, were timely paid. In addition, the debtor's motion to assume

was mailed within the option period, but was not received by the court until eight days later, and the debtor was in a position to satisfy all conditions precedent to assumption. The facts of the present proceeding indicate that the debtor's pre-petition rent payments were five months in arrears, and the instant motion is 115 days late. Furthermore, unlike *Curio Shoppes*, the lessor in the present proceeding is not seeking to keep the debtor as its tenant, but at a much higher rent. The application of the plain language of § 365(d)(4) under the present scenario does not produce a result inconsistent with the intent of the drafters. It is consistent with the intent to provide a lessor with an element of certainty, while permitting a debtor to seek a timely extension if the situation requires it.

The only grounds advanced by the debtor for the delay in filing its motion are the inattention and/or illness of its prior attorney and his staff. Such circumstances are not of a nature that would permit a court to invoke its equitable powers to permit a non-literal interpretation of a statute.

The court finds no basis for disregarding the plain language of § 365(d)(4) providing for automatic rejection of the lease as of the end of the statutory option period, January 11, 1999.

## IV.

### CONCLUSION

For the foregoing reasons, the debtor's motion, concededly untimely filed, must be, and hereby is, denied.