In the

# United States Court of Appeals
## For the Seventh Circuit

————————

No. 07-1286

NAJIB ZEDAN,

*Plaintiff-Appellant*,

*v.*

BASEM E. HABASH and SUSAN HABASH,

*Defendants-Appellees*.

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 4047—**Elaine E. Bucklo**, *Judge.*

————————

ARGUED NOVEMBER 8, 2007—DECIDED JUNE 16, 2008

————————

Before EASTERBROOK, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Basem Habash filed a voluntary bankruptcy petition in August 2004. Nearly 20 months later, Najib Zedan, a judgment creditor of Habash, initiated an adversary proceeding that objected to the discharge of Habash's debts because of alleged fraud by Habash in representing his income and assets to the bankruptcy trustee. *See* 11 U.S.C. §§ 523(a)(4); 727(d)(1). At the time Zedan filed the adversary complaint, the deadline for creditors to object to a discharge had long passed,

and the bankruptcy court had yet to grant a discharge to Habash. The bankruptcy court dismissed Zedan's complaint, and Zedan immediately appealed the decision to the district court, which affirmed the dismissal. *See Zedan v. Habash (In re Habash)*, 360 B.R. 775 (N.D. Ill. 2007). We also affirm the dismissal of Zedan's complaint.

## I. HISTORY

Habash filed for bankruptcy in the Northern District of Illinois in late August 2004. The bankruptcy court scheduled the first meeting of creditors for late October 2004, and set a deadline of December 20, 2004, for creditors to file objections to the discharge of Habash's debts. *See* Fed. R. Bankr. P. 4004(a). Before the creditors' meeting, the appointed bankruptcy trustee resigned; consequently, the creditors' meeting was rescheduled for early December 2004. In late November 2004, Zedan, a judgment creditor, filed a motion to extend the time for creditors to object to the discharge. The bankruptcy court granted Zedan's motion and extended the creditors' deadline until February 4, 2005. In January 2005, the newly appointed bankruptcy trustee, Deborah Ebner, filed a motion to extend her own deadline to object to Habash's discharge. This motion, and a subsequent motion to extend, were both granted, and the trustee was ultimately given a September 2005 deadline to object to the discharge.

Zedan did not file any objection to Habash's discharge before February 4, 2005 (nor did any other creditor). For the next ten months, Habash cooperated with the trustee—he participated in discovery conducted by the trustee's attorney in September 2005, *see* Fed. R. Bankr. P. 2004, and negotiated a resolution of his case that would include an auction of his assets and the eventual dis-

charge of his debts. The trustee did not object to the discharge, and in December 2005, the bankruptcy court entered an order approving the agreed-upon procedure for dividing Habash's non-exempt assets, and scheduled a sale for February 2006.

In January 2006, Zedan hired new counsel, who immediately filed a motion to postpone the scheduled sale. This eleventh-hour motion argued that the sale of Habash's assets should be postponed because, Zedan alleged, Habash had fraudulently represented his income and the value of his assets to the bankruptcy trustee. The bankruptcy trustee did not join in Zedan's objection. On February 8, 2006, the bankruptcy court denied Zedan's motion, and on February 15, 2006, the auction sale of Habash's non-exempt assets took place. The bankruptcy court approved the sale a few days later.

In April 2006, Zedan filed an adversary complaint in the bankruptcy court under 11 U.S.C. §§ 523(a)(4) and 727(d)(1), and also under Illinois law governing fraudulent transfer and misappropriation of corporate assets. The adversary complaint sought a judgment that Habash's debts were non-dischargeable, and reiterated most of the arguments that Zedan had raised in his motion to postpone the sale—the adversary complaint alleged fraud by Habash when disclosing his income, property value, and inventory to the trustee. *See Habash*, 360 B.R. at 777. In July 2006, without issuing an opinion, the bankruptcy court dismissed Zedan's adversary proceeding with prejudice— ostensibly because the bankruptcy court regarded the complaint as untimely.[1]

---

[1] Specifically, the bankruptcy court stated: "The time limits expired in February of '05 and there's no reason that they

(continued...)

Zedan immediately appealed the bankruptcy court's dismissal to the district court, asserting that the bankruptcy court failed to apply the proper legal standard when dismissing the adversary complaint and improperly dismissed the complaint as untimely. As for timeliness, Zedan argued that the adversary complaint was based on fraud that was not discovered until after the deadline to file objections had lapsed. As such, Zedan contended that his adversary complaint asserted a claim based on "newly discovered fraud" under 11 U.S.C. § 727(d)(1), and he argued that the timing requirement of 11 U.S.C. § 727(e)—which permits a creditor to pursue revocation of a discharge within one year of an actual discharge—should apply instead of the bankruptcy court's deadline for creditors to object to the discharge. The bankruptcy court still had not granted a discharge to Habash, and Zedan argued that "if one can file an adversary complaint based on fraud one year after discharge, then surely one can file it after a deadline has passed, but before a discharge."

In January 2007, the district court affirmed the bankruptcy court's dismissal of Zedan's adversary complaint "on different grounds." *Habash*, 360 B.R. at 778. In the district court's view, the bankruptcy court had erred as a matter of law because the February 2005 date to file objections did not bar Zedan from pursuing relief under 11 U.S.C. § 727(d)(1). *See id*. The district court held that because no discharge had ever been entered, Zedan had acted within the time limits set by 11 U.S.C. § 727(e). *See id*.

---

[1] (...continued)
should be extended, changing attorneys doesn't mean you get to start over again. So the motion to dismiss is granted." *Id*.

However, the district court adopted a different timeliness limitation: it stated that Zedan was required to file his adversary complaint within one year of discharge or within one year after the "cut-off date to file objections." *See id.* (citing *Citibank N.A. v. Emery (In re Emery)*, 132 F.3d 892, 895-96 (2d Cir. 1998)). The district court then held that Zedan's adversary complaint was still untimely because he failed to file within one year of the cut-off date. *See id.* In addition to untimeliness, the district court also noted that Zedan's adversary complaint was legally insufficient because Zedan failed to plead his claim with particularity as required by Fed. R. Bank. P. 7009, and because he had failed to investigate and diligently pursue his claim despite being on notice of the alleged fraud. *Habash*, 360 B.R. at 778-80. Zedan filed a notice of appeal in this court on February 8, 2007.

## II. ANALYSIS

Before we can consider the merits of Zedan's appeal, we must first address a question of appellate jurisdiction noticed by the panel. *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006); *see also Chiplease, Inc. v. Steinberg (In re Res. Tech. Corp.)*, No. 07-1879, slip op. at 13 (7th Cir. May 15, 2008) ("Our first task is to confirm that we have jurisdiction to hear this appeal."). At the time Zedan filed his notice of appeal, the bankruptcy court had still not decided whether to grant a discharge to Habash. Shockingly, neither side's brief contained this fact—or any facts regarding the status of the bankruptcy case—as required by Circuit Rule 28(a)(3). *See Fifth Third Bank, Ind. v. Edgar County Bank & Trust*, 482 F.3d 904, 905 (7th Cir. 2007) ("Circuit Rule 28(a)(3) . . . requires details on how the matters appealed in a bankruptcy case relate to any part

of the litigation still under way in the bankruptcy court or the district court."). Nor could the parties definitively answer our questions about the status of the bankruptcy at oral argument.

Frustrated by this noncompliance with our circuit rules, Chief Judge Easterbrook, on behalf of the panel, issued an order from the bench requiring the parties "to file supplemental memoranda addressing whether rejecting a single potential objection to discharge is a final order immediately reviewable by the Court of Appeals even though the bankruptcy judge has yet to decide whether the debtor will be discharged." That order also requested that the parties brief the status of the ongoing bankruptcy proceedings. The parties complied with the order, and both supplemental memoranda concluded that we have jurisdiction over this appeal.

From conducting our own review of the bankruptcy court's docket, we learned that Habash's assets had been distributed from the estate prior to oral argument in this appeal, and on November 21, 2007, the bankruptcy court finally granted a discharge to Habash. On November 27, 2007, Zedan filed a new notice of appeal to the district court in the bankruptcy proceeding: in that action, presently before the Northern District of Illinois (No. 08 C 0120), Zedan appealed both the bankruptcy court's November 21, 2007 discharge order and its July 2006 order dismissing his adversary complaint—the order at issue before us. Habash filed a motion to dismiss that case based on lack of jurisdiction; that motion is still pending.

This court has jurisdiction over "appeals from all final decisions, judgments, orders, and decrees entered" by a district court pursuant to its review of final decisions of a bankruptcy court. 28 U.S.C. § 158(d)(1). Therefore, we

only have jurisdiction over a bankruptcy appeal if both the bankruptcy court's order and the district court's order reviewing that original order are final decisions. *Salem*, 465 F.3d at 771 (citing *In re Rimsat Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000)). We have observed that finality in a bankruptcy appeal under 28 U.S.C. § 158(d) is "considerably more flexible than in an ordinary civil appeal taken under 28 U.S.C. § 1291." *In re Gould*, 977 F.2d 1038, 1040-41 & n.2 (7th Cir. 1992); *see also Chiplease*, No. 07-1879, slip op. at 14; *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1299 (7th Cir. 1997). In the bankruptcy context, finality does not require the termination of the entire bankruptcy proceeding. *See In re UAL Corp.*, 411 F.3d 818, 821 (7th Cir. 2005) (" '[T]he fact that the bank-ruptcy proceeding continues before the bankruptcy judge does not preclude treating an interlocutory order by him—interlocutory in the sense that it does not terminate the entire proceeding—as final for purposes of appellate review.' " (quoting *In re Szekely*, 936 F.2d 897, 899 (7th Cir. 1991))). Rather, the test we have utilized to determine finality under § 158(d) is whether an order resolves a discrete dispute that, but for the continuing bankruptcy, would have been a stand-alone suit by or against the trustee. *See Bank of Am. v. Moglia*, 330 F.3d 942, 944 (7th Cir. 2003) (citing *Golant v. Levy (In re Golant)*, 239 F.3d 931, 934 (7th Cir. 2001) and *Rimsat*, 212 F.3d at 1044).

We have consistently explained that the final disposi-tion of any adversary proceeding falls within our juris-diction. *See In re Teknek, LLC*, 512 F.3d 342, 345 (7th Cir. 2008) ("For the purpose of appellate jurisdiction we treat adversary proceedings as if they were separate suits."); *Fifth Third Bank*, 482 F.3d at 905 ("A final resolution of *any* adversary proceeding is appealable, as it is equivalent to

a stand alone lawsuit." (citing *Forty-Eight Insulations*, 115 F.3d 1294; *In re Morse Elec. Co.*, 805 F.2d 262 (7th Cir. 1986)) (emphasis added)); *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 292 (7th Cir. 2003) ("We have jurisdiction of the creditors' appeal, because the order under review is the final decision in an adversary proceeding."); *In re Lopez*, 116 F.3d 1191, 1193 (7th Cir. 1997) ("A bankruptcy case is often a congeries of functionally distinct cases. The clearest example is that of the adversary action . . . . Once the action is finally decided in the bankruptcy and district courts, the fact that the bankruptcy proceeding may be continuing is no reason to delay the appeal from the decision in the action, so the decision is deemed 'final,' and appeal allowed."); *see also In re UAL Corp.*, 408 F.3d 847, 850 (7th Cir. 2005); *In re Marchiando*, 13 F.3d 1111, 1113-14 (7th Cir. 1994).

This sweeping language is harmonious with the fact that adversary proceedings frequently resolve legal issues that appear logically separate from the ordinary measures determined in the main bankruptcy proceeding. *See Teknek*, 512 F.3d at 345 ("Adversary proceedings (for example, tort actions against a debtor, or attempts by the debtor to recover preferential transfers) are conceptually distinct from core matters such as locating the debtor's existing assets and approving plans of reorganization."). But here the conceptual gap between the subject matter resolved in the adversary proceeding and "core matters" has been somewhat narrowed because Zedan has filed an adversary complaint to revoke a discharge, which is more closely related to the main proceedings. *See Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (noting that Congress has classified an objection to a debtor's discharge as a core proceeding); *see also* 28 U.S.C. § 157(b)(2)(J). Nevertheless, we have ac-

knowledged that the dismissal of an adversary complaint objecting to a debtor's discharge is a final decision that falls within our jurisdiction. *See Marchiando*, 13 F.3d at 1113-14; *Suburban Bank of Cary Grove v. Riggsby* (*In re Riggsby)*, 745 F.2d 1153, 1154 (7th Cir. 1984) ("[W]e think it reasonably clear that the dismissal by the bankruptcy judge of a complaint objecting to the discharge of the bankrupt is final."). This is because the adversary proceeding will finally determine the rights of the creditor seeking to object to or revoke the discharge, even if it does not finally determine the rights of the debtor. And that sort of "discrete" finality is sufficient to confer jurisdiction under the relaxed approach to finality applied in bankruptcy cases. *See, e.g.*, *Chiplease*, No. 07-1879, slip op. at 14; *Moglia*, 330 F.3d at 944; *Forty-Eight Insulations, Inc.*, 115 at 1299.

Zedan filed his claim as an adversary proceeding because the Bankruptcy Rules required him to do so—a creditor who seeks to object to or revoke the discharge of a debtor *must* initiate a separate adversary proceeding. *See* Fed. R. Bankr. P. 4004(d), 7001(4). The adversary proceeding was finally resolved by the bankruptcy court in July 2006 when it dismissed the adversary complaint with prejudice. *See* Fed. R. Bankr. P. 7041 (incorporating Fed. R. Civ. P. 41 into adversary proceedings in bankruptcy); Fed. R. Civ. P. 41(b) (stating that an involuntary dismissal "operates as an adjudication on the merits"). Once the bankruptcy court entered the order of dismissal, the court was left with nothing further to do with respect to the adversary complaint. *See Marchiando*, 13 F.3d at 1113. Similarly, the district court's order affirming that dismissal also constituted a final judgment. Therefore, we have jurisdiction over this appeal.

Turning to the merits, we review the dismissal of an adversary complaint in bankruptcy *de novo*. *Enodis Corp. v. Employers Ins. of Wausau (In re Consol. Indus.)*, 360 F.3d 712, 716 (7th Cir. 2004). We may affirm the district court's decision on any basis supported by the record. *Dye v. United States (In re Dye)*, 360 F.3d 744, 750 (7th Cir. 2004); *Goldberg Sec. Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 526 n.5 (7th Cir. 1992).

Zedan claims that the bankruptcy court and district court both erred in dismissing his adversary complaint for its untimeliness. Zedan argues that his adversary complaint alleged evidence of fraud that was undiscovered until September 2005. Zedan claims that because of the "newly discovered fraud," and because the bankruptcy court had yet to grant a discharge, his complaint was timely under 11 U.S.C. § 727(e). Zedan also contends that the district court erred by applying the improper legal standard when it determined that Zedan had not pled the fraud with particularity as required by Fed. R. Bankr. P. 7009.

Zedan's adversary complaint requested a declaration that Habash's debts were not dischargeable because of the alleged fraud. At the time of the complaint, the bankruptcy court had not yet ordered a discharge; in the ordinary course, Zedan's claim would have been filed as an *objection* to a yet-to-issue discharge. *See* 11 U.S.C. § 727(c). But because the deadline to file objections had lapsed, Zedan's adversary complaint invoked 11 U.S.C. § 727(d)(1), which entitles a debtor to different relief— *revocation* of an already-issued discharge.

At first blush, Zedan's adversary complaint seems nonsensical—Zedan filed a complaint to "revoke" a non-existent discharge. But Zedan's creative pleading arises

from a deeper quandary created by the juxtaposition of the Bankruptcy Code with the Federal Rules of Bankruptcy Procedure. Under the Code, a creditor may object to the granting of a discharge to a debtor. 11 U.S.C. § 727(c). The Federal Rules of Bankruptcy Procedure require a creditor who seeks to object to or revoke the discharge of a debtor to initiate a separate adversary proceeding. *See* Fed. R. Bankr. P. 4004(d); Fed R. Bankr. P. 7001(4). In turn, Fed. R. Bankr. P. 4004(a), which governs adversary proceedings filed in objection to a debtor's discharge, requires a complaint objecting to the discharge to be filed no later than 60 days following the first set meeting of the creditors. Once this time expires, and if no objection has been lodged, the Bankruptcy Rules state that "the court shall forthwith grant the discharge." Fed. R. Bankr. P. 4004(c); *see also Emery*, 132 F.3d at 895.

So the Bankruptcy Rules clearly contemplate that a discharge will follow almost immediately after the 60-day period to file an objection expires. Yet, as this case demonstrates, the 60-day window under the Bankruptcy Rules may close well before any discharge is granted. When that happens, the expiration creates a "gap period" between the deadline for creditors to object to a discharge, and the date the discharge is actually granted. *See Emery*, 132 F.3d at 895; *England v. Stevens (In re Stevens)*, 107 B.R. 702 (9th Cir. BAP 1989). In this case, the gap period resulted because the bankruptcy court bifurcated the deadline for the creditors to object to the discharge (February 2005) and the deadline for the trustee to object to the discharge (September 2005).

The gap period creates a predicament for creditors who discover a debtor's fraud during the gap period (*i.e.*, the creditor who discovers the debtor's fraud *after* the

deadline to file objections has elapsed but *before* a discharge has been entered) because the Bankruptcy Code requires a creditor to be ignorant of the debtor's fraud until after the discharge date in order to avail himself of the process for revoking the discharge. *See* 11 U.S.C. § 727(d)(1). But under the Bankruptcy Rules, a bankruptcy court will likely dismiss a creditor's objection as untimely if it comes after the deadline to file objections has passed—as was the case for Zedan here. Thus, a creditor who learns of fraud during the gap period is whipsawed and left no remedy under either the Bankruptcy Code or the Bankruptcy Rules: he cannot file a timely objection under the Rules, and the language of the Code prevents him from revoking the discharge once it is issued.

Other federal courts have noticed this tension between the Bankruptcy Code and the Rules. In *In re Emery*, the Second Circuit resolved the dilemma, stating that "we do not believe that Congress intentionally drafted a statute to punish fraudulent conduct by debtors that at the same time provides a period of immunity for such debtors." 132 F.3d at 896. As a result, the Second Circuit eschewed a literal interpretation of § 727(d)(1): it ignored the clear statutory limitation that a creditor must learn of the debtor's fraud after the discharge, and allowed a creditor who learned of fraud during the gap period to bring a claim for revocation. *See id.* at 895-97. This was the approach the district court modeled its decision on in this case. *See Habash*, 360 B.R. at 778.

The Ninth Circuit has also allowed an adversary complaint to proceed even though it was filed pursuant to § 727(d)(1) before a formal order of discharge was entered. *See Dietz v. Mitchell (In re Dietz)*, 914 F.2d 161 (9th

Cir. 1990). In contrast, several district and bankruptcy courts have elected to enforce the literal language of the Bankruptcy Code, and have barred claims filed based upon fraud learned during the gap period. *See Santa Fe Private Equity Fund II, LP v. Silver (In re Silver)*, 367 B.R. 795, 821-22 (D. N.M. 2007); *Powell v. First Nat'l Bank (In re Powell)*, 113 B.R. 512, 513 (W.D. Ark. 1990); *Employers Mut. Cas. Co. v. Lazenby (In re Lazenby)*, 253 B.R. 536 (Bankr. E.D. Ark. 2000).

The district court explained that Zedan's complaint failed to state a claim under either approach. Zedan clearly was not ignorant of the alleged fraud before the discharge—in fact, the discharge had not been entered when he filed his adversary complaint, or even when he appealed its dismissal to the district court. Thus, Zedan's claim failed under the literal language of the statute. The district court also reasoned that Zedan's claim failed under the more lenient approach because he filed his adversary complaint in April 2006, more than one year after the deadline to file objections imposed by the bankruptcy court.

But we do not think the district court needed to go so far—this case is far simpler. Unlike the creditor in *Emery*, Zedan filed his complaint to "revoke" the discharge before the discharge had ever been entered. Our initial instinct—that Zedan has advanced a nonsensical claim—holds true because Zedan's complaint sought relief that the bankruptcy court could not possibly grant. A bankruptcy court cannot revoke an order that it has never issued. Therefore, Zedan's adversary complaint failed to state a claim upon which relief could be granted, *see* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012, and both lower courts properly dismissed the complaint, *see Vill. of*

*Rosemont v. Jaffe*, 482 F.3d 926, 936 (7th Cir. 2007). We need not decide on the proper approach to a gap-period creditor's dilemma here.

Still, it seems to us that a literal reading of § 727(d)(1) is the better solution. The clear, unambiguous language of the statute requires that "the requesting party . . . not know of the fraud until after the granting of the discharge." 11 U.S.C. § 727(d)(1). And "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters.*, 489 U.S. 235, 240-41 (1989); *see also Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). We believe the language of the Bankruptcy Code is coherent and consistent: while Congress undoubtedly has provided for the revocation of a discharge in cases of fraud, it has clearly limited the statutory remedy in unambiguous terms.

Fed. R. Bankr. P. 4004(a), which sets an earlier deadline for objecting to the discharge, is one of the Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court, and as such cannot "abridge, enlarge, or modify any substantive right." *See* 28 U.S.C. § 2075; *see also Term Loan Holder Comm. v. Ozer Group (In re Caldor Group)*, 303 F.3d 161, 170 (2d Cir. 2002) ("[F]orsaking the plain meaning of a provision of the Bankruptcy Code solely because that meaning conflicts with a bankruptcy rule would run afoul of 28 U.S.C. § 2075."). The Bankruptcy Rules' requirement that objections be lodged within 60 days, *see* Fed. R. Bankr. P. 4004(a), combined with its promise that a discharge be granted "forthwith," *see* Fed. R. Bankr. P. 4004(c), makes it unlikely that a gap period will occur. However, when the Bankruptcy Rules fail to operate as expected and produce a conflict with the Code, the Code must prevail. If Con-

gress wants to address this conflict, it is its prerogative to do so. *Silver*, 367 B.R. 795, 822 n.57. Likewise, the Supreme Court might take initiative and amend the Bankruptcy Rules to avoid clashing with the Code.

A literal reading of the Bankruptcy Code also makes sense in light of our recognition that provisions of the Code should be construed liberally in favor of the debtor. *See, e.g.*, *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). Section 727(d)(1) explicitly limits the rights of a creditor to revoke a discharge; this limitation obviously inures to the benefit of the debtor. And a creditor who fears that he might discover fraud during the gap period and thus lose his § 727(d)(1) action for revocation still has other remedies: he may either petition the bankruptcy court to extend the deadline to file objections, *see* Fed. R. Bankr. P. 9006(b), or request more time to conduct a sufficient investigation of the debtor, *see* Fed. R. Bankr. P. 4004(b); *see also Mid-Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 887 (8th Cir. 1991) ("[T]he burden is on the creditor to investigate diligently any possibly fraudulent conduct before discharge.").

In this case, Zedan elected to forego these rights and wait for the trustee to investigate Habash. As a result, Zedan bore the unfortunate consequence of learning about the alleged fraud within the gap period. He therefore would have been disqualified from the relief provided by 11 U.S.C. § 727(d)(1) under the plain terms of the statute even had he waited for the bankruptcy court to enter a discharge. This result seems neither harsh, nor unjust, considering that Zedan did not conduct his own discovery but merely attempted to avail himself of fortuitous testimony elicited during the trustee's investigation. This fact demonstrates why a literal interpretation

of the Bankruptcy Code ensures the better course—creditors will have an incentive to actively investigate a debtor for potential fraud before the period to object closes, rather than wait until after discharge, which forces the bankruptcy court to undo the fresh start that equity grants to a debtor.

## III. CONCLUSION

We AFFIRM the dismissal of the adversary complaint.

EASTERBROOK, *Chief Judge*, concurring.    Although I join the court's opinion without reservation, a few additional observations about appellate jurisdiction are appropriate.

The terminating order of an adversary action in bankruptcy is a "final decision" for the purpose of 28 U.S.C. §158(d). Many decisions in this circuit, and elsewhere, so hold. Any effort to sort the final decisions of adversary proceedings into appealable and non-appealable bins would lead to pointless grief and expense. A clear rule on jurisdictional issues beats a fuzzy standard. See *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988). So we have appellate jurisdiction because Zedan filed an adversary action, in which both the bankruptcy judge and the district judge rendered final decisions.

But should this have happened? As the court's opinion observes, Fed. R. Bankr. P. 4004(d) and 7001(4) say that

creditors must initiate adversary actions if they want the court to block or revoke a discharge. These rules appear to be inconsistent with a statute that classifies objections to discharge as core proceedings. 28 U.S.C. §157(b)(2)(J); *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004). Rule 7001(4), which governs this subject (Rule 4004(d) is just a pointer), was adopted before 1984, when §157(b)(2)(J) was enacted, and has not been revisited to ensure conformity to the statute.

If Zedan's objection had been presented as a core proceeding, as it should have been under the statute (but not the rule), then we would lack appellate jurisdiction. A decision rebuffing one objection to another litigant's request is not "final" in the sense that matters for appellate review. After the bankruptcy judge found Zedan's position wanting, the question whether Habash's debts would be discharged remained open; the judge did not reach the ultimate decision until after Zedan's appeal had been argued in this court. One might as well appeal from an order denying a motion for discovery or a grant of summary judgment on some but not all of a litigant's legal theories. But because Zedan's motion was handled as an adversary action, the disposition is appealable. I do not think that we can dismiss the appeal from the terminating decision of the proceeding actually conducted, just because the bankruptcy court should have conducted a different kind of proceeding. Even if we were to hold that §157(b)(2)(J) supersedes Rule 7001(4), the fact would remain that this *was* an adversary action.

Only the Supreme Court (on the recommendation of the Judicial Conference and its Committee on Rules of Practice and Procedure) can bring the Bankruptcy Rules into harmony with the statute. As this case shows, the choice

between core and adversary proceedings affects appellate review as well as the style and service list of papers filed in the bankruptcy court. I do not see any good reason why the rules should employ a form that can produce appellate review of one creditor's arguments against a discharge, before the bankruptcy court has decided whether the debtor receives one. After Zedan filed his appeal, the bankruptcy judge might have denied Habash a discharge following an objection from the Trustee or a creditor who filed within the deadline. Separating Zedan's arguments from those of other participants in the bankruptcy, and dispatching them for immediate appeal while the bankruptcy judge has yet to decide the main question, presents abstract issues and squanders judicial resources. The appropriate committees should take a look at this subject.